UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

In the Matter of Arbitration between,                    :


FORALL USA, INC.,                                        :        Civil Action No.

              Petitioner,

                               :

        v.

SARAH LLC, HALA SUBH, SUHAD                              :
ALBASHA, BACHAR HAMAD and AMAR
HAMAD,

                               :

           Respondents.


_____ :

## MEMORANDUM OF LAW IN SUPPORT OF PETITION TO CONFIRM AWARD

Petitioner, Forall USA, Inc. (herein "Forall" or "Petitioner"), by and through its attorneys, Bleakley Platt & Schmidt, LLP, hereby submits its Memorandum of Law on the facts and law in support of its Petition to confirm the Arbitration Award dated January 25, 2021, issued in the underlying Arbitration proceeding, commenced by Sarah LLC, Hala Subh, Suhad Albasha, Bachar Hamad and Amar Hamad (collectively, "Sarah" or "Respondents").

For the reasons demonstrated at hearing and further supported below, it is respectfully submitted that Forall is entitled to recover the amounts set forth in the Arbitration Award, to wit, $ 2,850,620.25, plus interest, costs and additional attorneys' as more specifically set forth in the Award, arising directly from Sarah's material breaches of the parties' contracts.  Moreover, and as a natural consequence of the evidence put forth at hearing and directed in the Award, the Respondents' affirmative claims in this case must denied and dismissed as having not support in fact or law.

## PRELIMINARY STATEMENT

This matter arises from a business venture between Forall and Sarah, LLC (and Sarah's principals),

for the manufacture, supply and sale of Pal Zileri™ products, goods and apparel.  Although this case proceeded to hearing, liability was and is readily demonstrated in favor of Forall and as against Sarah, as there is no genuine dispute that Sarah and its principals materially breached the multiple contractual agreements with Forall relating to Sarah's ownership, management and operation of the Pal Zileri™ store at the Forum Shops at Caesars Palace in Las Vegas, Nevada ("Forum Shops").

Pursuant to the parties' contract, which was negotiated at arms' length by sophisticated business people with counsel on both sides of the deal, Sarah and its principals committed to, *inter alia,* open and operate a high-end retail men's clothing store that would sell Pal Zileri clothing and products, manufactured and supplied exclusively by Forall.  *See* License and Retail Operator Agreement between Forall and Sarah dated March 19, 2011, at accompanying Declaration of Stephen J. Brown, Esq., dated March 30, 2020 at Exhibit B. There can be no dispute concerning the enforceable and binding nature of this agreement.  Under this contract, Sarah agreed to purchase a minimum amount of $900,000.00 of Pal Zileri product (clothing and accessories) from Forall each year during the contract term, which was to span ten (10) years.  Ex. 1 ¶ 4.2. Sarah's obligations under the contract were backed by personal guarantees, signed by its principals, Dr. Bachar Hamad, Dr. Amar Hamad, Hala Subh, and Suhad Albasha.

In turn, Forall agreed, *inter alia,* to help fund the build-out and design of the retail space, through discounted product prices, and to provide Sarah with support and a supply of products and goods for sale in the Respondents' retail store.  *See* Decl SJB at Exhibit B.  Although Sarah and its principals initially opened and operated the store, it was not long before they failed to meet their contractual obligations and took extraordinary measures to get out from the deal they had negotiated.

As the evidence overwhelmingly demonstrates in this case, Sarah repeatedly breached its contractual obligations to Forall – including but not limited to its ongoing minimum purchase requirements for the term of the agreement and its obligation to maintain the lease and operate the store at the Caesars, Las Vegas location for the full term of the contract.  Eventually, Sarah's breaches culminated in its unilateral decision to voluntary cancel the lease of the Pal Zileri store and surrender the retail space to the landlord in 2016, *while and during the term that* Forall was operating the store pursuant to a Management Agreement between Forall and Sarah.  In so doing, Sarah improperly terminated the contract, forced the immediate closing of the store

and associated loss and discounting of valuable product, and dramatically exacerbated Forall's damages. These facts have been established at hearing.

The evidence further shows that Forall made multiple and extensive efforts to mitigate its damages throughout the relationship with Sarah. Ultimately, however, due to the severity of Sarah's breach of the parties' agreements and its bad faith conduct, Forall suffered considerable damages that must be compensated under well-established case law and statutory law.

Although it was Sarah that commenced this arbitration proceeding as a means of attempting to avoid its contractual obligations and liability to Forall, the record has revealed the false nature of Sarah's contentions and claims in this case – and thereby destroyed the Respondents' credibility in this proceeding. Respondents' recitation of the "facts" in their petition and pre-arbitration brief are demonstrably false in numerous material respects.

Moreover, Sarah's legal arguments – including its claims of estoppel, waiver and novation, etc. – fail as a matter of both fact and law. The evidence at hearing revealed that Sarah had in fact met the minimum purchase requirements under the License Agreement during its operation of the store between 2011 and 2013. Therefore, Sarah's argument that Forall had somehow waived Sarah's obligation to purchase the $900,000 minimum under the contract found no basis in fact.

Even assuming *arguendo* that Sarah had not met the minimum purchase obligations, the very terms of the written agreements between Sarah and Forall expressly preclude these arguments of waiver and/or estoppel under New York law. The unambiguous terms of the parties' contracts must be enforced, including the provisions addressing: (i) non-waiver, (ii) no oral modification, and (iii) full integration clauses. These provisions, among others, are fatal to Sarah's claims and defenses.

The evidence at the hearing clearly demonstrated that Sarah and the Individual Guarantors breached their agreements with Forall and have shown a complete disregard for the law and the truth. Having established liability, the issue turns to determining the appropriate measure of damages for the breach by Sarah. This too is also straight-forward under settled New York law. Forall is entitled to the benefit of the bargain and seeks only to recover money that the breaching party (Sarah) agreed to pay under the contract – i.e., general and incidental damages under the contract. Forall's entitlement to these "lost profits" under the

contract is established under case law and the UCC, which has application to this matter.  It does not matter whether and to what extent Forall was *profitable* as a company – that is the not the appropriate measure or an element of damages and therefore has no bearing on assessing damages under this particular contract.

Forall has established that it was damaged by the Respondents' actions in this case and that it is entitled to the full measure of damages sought in this case, including its lost profits under the License Agreement, the incidental costs associated with Sarah's breach, and attorneys' fees, arbitration costs, and interest.

## RELEVANT FACTS

### A.  The License and Retail Operator Agreement for the Las Vegas Store

This dispute arises from a License and Retail Operator Agreement by and between Forall and Sarah, dated March 2011 (herein "License Agreement"), which set forth the parties' agreement and obligations relating to, *inter alia*, the opening and operation of a men's luxury retail Italian clothing and apparel store under the brand name *Pal Zilerí*™ at The Forum Shops at Caesars Palace in Las Vegas, Nevada ("The Forum Shops").  License Agreement at Decl. SJB Ex. B.

Pal Zileri is an Italian luxury brand specializing in both formal and casual menswear.  See Hearing Transcript at Decl. SJB Exhibit G, Testimony of Paolo Torello-Viera, 10/28/2020, Tr. pgs. 91 – 93.  Pal Zileri is part of Forall Confezioni S.p.A., the parent company of Forall USA Inc.  Decl. SJB Exhibit G, Transcript ("Tr.") Luca Spano, 10/26/2020, pg. 126, etc.  The Pal Zileri brand originated in Vicenza, Italy, and it is now headquartered in Milan and is world-renowned for its fashion and celebrity appeal.  Forall is a wholly owned subsidiary of Forall Confezioni S.p.A, and is the brand's USA operational division.  Forall has an exclusive license in the United States to market, distribute and sell the Pal Zileri line of formal and casual Italian men's clothing and apparel.  Pal Zileri is sold in stores such as Nordstrom, Saks Fifth Avenue, Harrods, and other high-end retailers.  Ex. G., Tr. Torello-Viera, 10/28/2020, pgs. 92.

In or around late 2010, Sarah's principals, Dr. Bachar Hamad and Dr. Amar Hamad, Hala Subh, and Suhad Albasha, (collectively herein the "Guarantors") approached Forall and expressed interest in opening a "Pal Zileri" store selling products and menswear under license from Forall.  Ex. G., Tr. Spano, 10/26/2020, pgs. 160-1.  The Guarantors own, control and otherwise manage Sarah, LLC.  *See* Ex. G, Tr. Dr. Amar

Hamad ("A. Hamad"), 10/27/2020, tr. pgs. 12- 13.  In order to induce Forall to enter into the License Agreement and to otherwise guarantee performance by Sarah LLC, the Guarantors individually guaranteed the performance of all obligations arising under the License Agreement.  *See* Ex. B and Guaranty at Ex. B.

The Guarantors were interested in opening the Pal Zileri store in Las Vegas, Nevada.  Their business plan included expanding to new stores throughout the United States, and Respondents therefore negotiated an exclusive option to open a Pal Zileri store in New York City and Chicago and a first option on all other locations in the U.S.  *See* Ex. B, Article 14.

At that time, Forall sold the Pal Zileri products and goods directly to high-end retailers at Forall's showroom in New York City and from the company's factory in Italy.  Forall was interested in expanding retail sales and brand recognition.  Thus, the agreement with Respondents provided what appeared like an ideal situation in which Forall could partner with an owner and operator of a high-end retail store with a leasehold and expand the reach and brand recognition of the Pal Zileri brand accordingly.

The Respondents presented as very well-off, business-like and motivated to expand and operate in the Italian menswear and apparel space.  Dr. Amar Hamad and Dr. Bachar Hamad are both physicians – sophisticated and successful practicing medical doctors in Illinois.  The two Doctors, together with their wives, agreed to personally guarantee the obligations of Sarah, LLC, in consideration of Forall granting them a license to the Pal Zileri brand and apparel and distribution and supply of products for sale.

Following extensive discussion and negotiations, Forall and Sarah executed the License Agreement in March 2011, under which Sarah agreed to open and operate a retail *Pal Zileri* menswear store for a period of 10 years, with certain minimum purchasing obligations each year.   In turn, Forall agreed, *inter alia*, to supply and provide licensed Pal Zileri product and apparel to Sarah for sale by Sarah; to allow Sarah to use and market the Pal Zileri brand and trademark in connection with the store; Forall further agreed to fund half (50%) of the build-out costs of the Pal Zileri store through discounts on products purchased by Sarah; and Forall agreed to provide marketing material and support and to contribute up to $27,000 on a dollar for dollar match of Sarah's marketing and advertising expenditures.  *See* Ex. B, Articles 2, 3, 5, 8, *etc.*

On May 11, 2011, Sarah separately entered into a retail Lease Agreement with a third-party, The Forum Shops LLC, c/o Simon Properties Group, as landlord, for space in which to open and operate the Pal

Zileri store.  A copy of the Lease Agreement is attached to the Answer with Counterclaims attached as Decl. SJB Ex. D (the "Lease").  Notably, Forall was not involved in the selection or negotiation of the terms of the lease agreement with The Forum Shops and Forall was not a party to the Lease.

As part of the License Agreement, Sarah executed a Collateral Assignment of Lease in favor of Forall, granting a security interest in the lease.  Sarah also expressly agreed not to surrender, transfer or otherwise assign Sarah's interest in the Lease without Forall's consent.  A copy of Collateral Assignment of Lease attached to SJB Decl. Exhibit D.  Respondents falsely claimed in their pre-arbitration brief that the Collateral Assignment of Lease was a *guaranty* of the Lease by Forall.  The evidence at hearing revealed this to be patently false; at no time was Forall a guarantor of the Lease.  Decl. SJB Exhibit G, Tr. Bachar Hamad, 10/27/2020, pgs. 267-271.

<u>Selected Material Terms of the License Agreement and the Opening of the Store</u>

The term of the License Agreement was for 10 years.  Decl. SJB Ex. B, Article 2.7.  The Pal Zileri store at The Forum Shops opened in or around September 2011.  Decl. SJB Ex. G, Tr. L. Spano, 10/26/2020, pgs. 125-130.  Forall provided full support, advertising and products for sale to Sarah for the grand opening and during all times relevant and at issue in this proceeding.  *Id*. at 125-6; 201-3; Forall also provided products for marketing and sale at the store. *Id.*  Notably, Sarah did not pay any fee or royalty or other money to Forall to obtain the Pal Zileri license, opportunities and other rights set forth in the License Agreement. Ex. B, Article 2.6.  Instead, as consideration and in exchange for the right to the Pal Zileri name, apparel and store rights, Sarah agreed to buy product minimums from Forall each season/year during the contract term. This minimum purchase obligation was agreed to by Sarah and its principals, in exchange for the supply and license of the Pal Zileri brand and products and the right to sell the Pal Zileri men's clothing and products and Forall's commitment to manufacture and deliver product and apparel to Sarah on a regular and seasonal basis, along with the other contractual obligations undertaken by Forall.  *See* Ex. B, Art. 4.

The testimony and evidence at hearing established that Sarah did in fact meet the minimum purchase obligations under the License Agreement during the 2011 to 2013 seasons in which Sarah was operating the store.  Decl. SJB, Ex. G, R-Ex. 130; Tr. P. Settimi, 10/29/2020, pgs. 25-30.

In addition, Forall agreed to (and did) fund fifty percent (50%) of the remodeling costs of the Pal

Zileri store at The Forum Shops (and any other stores opened during the term of the License Agreement). Ex. 1, Article 5.  Per the License Agreement, Forall's contribution to the remodeling costs were provided by way of discounted Pal Zileri product sold to Sarah.  (In other words, Sarah would receive product at discounted prices in payment of Forall's half of the build-out costs.)  These costs totaled approximately $474,349.85.  Contrary to the claims made in the demand for arbitration, Sarah was reimbursed and otherwise credited all of the construction costs.  *See* Ex. G, Tr. L. Spano, 10/26/2020, pgs. 198 – 209.  In fact, the evidence and testimony at hearing revealed that Sarah was actually credited $512,639 in construction costs – equal to an *over-credit* of $38,298.15.  Joint Hearing Exhibit 130, pg. 2.  Ex. G, Tr. L. Spano, 10/26/2020, pg. 207.  Thus, it is Sarah that owes Forall the $38,298.15 and not the other way around!

Moreover, Sarah's claims that they are "owed" moneys for construction costs and that they were somehow damaged by a failure to pay these moneys case fails as a matter of law. because the parties' Agreement called for discounts against product purchased by Sarah – and Sarah ultimately failed to operate the store and purchase product from Forall pursuant to the terms of the Agreement.

The evidence showed that Forall applied the construction cost discount to product purchased by Sarah as per the License Agreement – and went even further than required and provided Sarah with other discounts on product when Sarah claimed that it was not making enough money on sales at the Pal Zileri store in 2012 and 2013.

Indeed, Forall funded half of the build-out of the Las Vegas store and incurred other costs in reliance upon Sarah's contractual promise that it would operate the store and purchase and sell Pal Zileri product and apparel through at least March 2021.  *See* Ex. B, Arts. 2.7 and 5.1.  Forall relied upon the duration of the contract in order to make up for its upfront costs and investment into the Store.  Forall's breach of the agreement thereby eliminated Forall's ability to realize the benefit of its bargain.

Further, and entirely contrary to Sarah's false assertions in the underlying case, Forall provided advertisement material and photographs and illustrations for product at cost to Sarah; and Forall contributed up to and beyond the $27,000 on a dollar-for-dollar match of Sarah's expenditures for advertising and promotion of the store.  Ex. B, Art. 8; Ex. G, Tr. L. Spano, 10/26/2020, pg. 229; Tr. A. Hamad, 10/26/2020, pg. 266.

**B.  Sarah Requests that Forall find a new Operator or Take Over the Store Less <u>than 1.5 years</u> <u>into Operations</u>**

On September 21, 2012, only a year after opening the store, Dr. Bachar Hamad wrote on behalf of Sarah to the landlord, Forum Shops, requesting a 30 % reduction in the rent of the store, citing the economy and consumer spending as contributing factors for the store's difficulties.  Joint Hearing <u>Ex. 429</u>. In this letter, Dr. Hamad states that Sarah has had to slash its marketing and advertising budget below what is appropriate and that the rent makes up 43% of the expenses for the store.  (As noted above, the lease terms, including the amount of the rent, were independently negotiated by Sarah with the landlord.  Forall was not a party to those negotiations or to the lease agreement.)

On January 28, 2013, Sarah sent a letter to Forall stating that Sarah LLC has found operating the Pal Zileri store at The Forum Shops "in a profitable manner to be a near impossibility."  *See* January 28, 2013 Letter at <u>Forall Hearing Ex. 120</u>.  The letter states that, contrary to the claims set forth in Sarah's arbitration demand, that Sarah's "conclusion [that the store cannot be run in a profitable manner] has come despite the best efforts of all parties involved, as well as the fine cooperation between Sarah and Forall USA, Inc…as well as the home operation of Pal Zileri."  *Id.*  The foregoing voluntary statement by Sarah is wholly contrary to their allegations that Forall did not support Sarah and damaged Sarah in various unsubstantiated ways.

In this letter, Dr. Hamad, invited Forall to take over operations of the store or to discuss some other options "to either find a way to put the store on the road to profitability, find a new operator for the store or close the store – whatever Sarah, Forall and Pal Zileri deem prudent."  *Id.*

On February 21, 2013, Forall responded to Sarah stating that it was important that Sarah continue to operate the store, but that Forall would attempt work with Sarah to find an experienced operator of the store.  Joint Hearing <u>Ex. 121</u>, letter dated February 21, 2013.  By this letter, Forall <u>expressly reserved all rights</u> as against Sarah under the License Agreement, and did it relieve Sarah of its contractual duties.  *Id.*  Indeed, Forall at that time advised that "Forall shall not assume any liability or obligation with respect to this search and <u>all of Sarah's obligations under the Agreement are continuing and in full force</u>." (emphasis added).

Thereafter, Forall did in fact undertake to attempt to identify a new third party to operate the store on Sarah's behalf, under a full reservation of rights and claims.  Forall did so in good faith and in effort to

mitigate damages due to Sarah's poor performance both at the store and under the parties' License Agreement.  By that time, it was becomingly increasingly clear to Forall that Sarah did not know how to effectively run the store.  The Sarah parties had proven themselves to be very difficult to deal with, did not communicate well with Forall, and did not make good business decisions.  Thus, the concept of bringing in a professional manager to operate the store on Sarah's behalf was one worth considering – as long as Sarah understood that its other obligations under the License Agreement would remain in place throughout the balance of the contract term.

Forall repeatedly reserved all rights under the License Agreement *et al* in all discussions with Sarah. Joint Hearing Ex. 109, 110, *etc.*

### C.  Sarah Notifies Forall that Sarah will Surrender the Lease to the Landlord Effective October 1, 2013 in Breach of the License Agreement and Collateral Assignment of Lease.

In early 2013, the record reflects that Sarah unilaterally approached the Landlord and began to negotiate a surrender of the Lease, despite its ongoing contractual obligations to run the store and to continue to purchase product from Forall for the balance of the term under the License Agreement.  Incredibly, right at this same time, Sarah was in advanced stages of negotiating a lease on a retail store space to open a new Pal Zileri store in Beverly Hills, California!  Tr. B. Hamad, 10/27/2020, pg. 250.  The Beverly Hills store proposal had not been presented to or otherwise approved by Forall in any respect.  Rather, Sarah was trying to get out of the Lease for the Las Vegas store, but was clearly still interested in operating as a retailer of the Pal Zileri brand and products.

On June 5, 2013, Dr. Hamad wrote to Forall by email, stating that he would be notifying the landlord, The Forum Shops at Caesars Palace, that Sarah LLC would "transfer the store to the mall effective "October 1, 2013]." Forall objected to this unilateral and anticipatory breach by Sarah.  Letter from Forall's counsel dated June 19, 2013 to Lee Levin, Esq., at Joint Hearing Ex. 110.  Thereafter, the parties continued to work to try to find an experienced operator of the store and, ultimately, Forall identified Italnord Forum LV, LLC, a retail operator known to Forall, as a possible party to manage the store for Sarah LLC on a going-forward basis.

### D.  Sarah and Italnord enter into a Management Agreement for the Store

In 2013, Forall made the introduction of Italnord (a known retail partner of Pal Zileri in Latin America) to Sarah LLC, and discussions ensued for Italnord to take over management of the store pursuant to a Management Agreement and an Asset Purchase Agreement both dated September 10, 2013.  Joint Hearing Exs. 7 and 8.   Respondents, however, fail to provide the full and true account of the arrangement and relevant contract terms between Sarah and Italnord.   Notably, Forall is not a party to either of these agreements.  Forall provided its consent to the management agreement only and upon and with express full reservation of rights as against Sarah.  *See* Ex. 3, Stipulation and Consent Agreement dated September 19, 2013, between Sarah and Forall.

The terms of the Italnord Management Agreement expressly state that Italnord would manage and run the store for a term of September 10, 2013 to January 31, 2015, after which point Italnord would either take over the store and Lease, or terminate the parties' Management Agreement and turn the store back to Sarah.  *See* Ex. 7, § 1.1, 2.1, etc.   Thus, Sarah fully understood and agreed, in writing, that it would resume operations of the store in the event that Italnord elected to terminate the Management Agreement.  The Management Agreement did not, in any sense, relieve Sarah of its contractual duties to Forall under the License Agreement.  In fact, as explained below, just the opposite is true.  Those duties were expressly preserved.  *See* Ex. 3, ¶¶ 7, 11, 12, *etc.*

Although Respondents argue that the transaction by and between Italnord and Sarah was a waiver or novation and acted as release of Sarah by Forall, this is expressly contradicted by the very terms of the documents.  Aside from the very clear nature of the agreements by and between the parties, it is clear from the documentary evidence that Sarah and its principals fully understood that the arrangement with Italnord was a management agreement (and not, as they claim, a sale of the business and store).

On August 20, 2013, Amar Hamad wrote to the Landlord's representative and stated that Sarah was bringing an experienced management company in to operate the store; however, Dr. Hamad continued: "Sarah LLC will still maintain responsibility in business dealing with [the Landlord.  This contemporaneous email, written at the time of the relevant events, reflects very clearly that Dr. Hamad and Sarah LLC fully understood that they remained liable on the store lease – notwithstanding their new arrangement with Italnord.

Under the APA, Italnord compensated Sarah for the store assets necessary to run and operate the store; however, as set forth in the terms of the agreement itself, the parties clearly understood and agreed that Italnord was <u>not</u> purchasing the Lease and was <u>not</u> assuming the License Agreement.  Italnord also paid $38,000 to Sarah for purported un-earned construction credits that Sarah alleged were owed to Sarah by Forall.  *See* <u>Ex. 6</u> at 1.4(b).  Although the Respondents in testimony denied receiving these monies, that is simply not credible. See Decl. SJB <u>Ex. G</u>, Tr. A. Hamad, 10/27/2020, pg. 70 -73; Tr. B. Hamad, 10/27/2020, pg. 279.

Pursuant to Section 1.7 of the APA, Sarah and Italnord agreed as follows: "<u>Notwithstanding anything in this Agreement to the contrary, [Italnord] is not assuming the Lease or the License Agreement in full; it is only assuming [Sarah's] performance and payment obligations during the Term (as defined in Section 4.4 of this Agreement) under the Lease, License Agreement, and other operational contracts listed on Schedule 1.1(c)(iv).</u>"  (emphasis added).  Section 4.4 of the APA set forth the term of the management of the store and the mechanism and procedure by which Italnord would elect to take over the business or turn the operation back to Sarah at the end of the Term, or January 31, 2015.

As a condition to the Italnord management of the Pal Zileri store, Sarah and Forall executed a Stipulation and Consent Agreement dated September 10, 2013, in which Forall consented to the management agreement between Sarah and Italnord.  Joint Hearing <u>Ex. 103</u>.  The Consent Agreement is clear -- Forall agreed to the management of the store by Italnord <u>on the express condition that</u> Sarah would continue to be responsible for all terms and obligations under the License Agreement upon termination of the Italnord Management Agreement.  *See* Joint Hearing <u>Ex. 103</u>, Sections 2 and 3, which state in pertinent part:

> During the term of the Management Agreement <u>only</u>, Forall shall look to the manager and hold the Manger responsible for the performance of all obligations under the License Agreement.  <u>To the extent the Management Agreement is terminated, at such time, [Sarah] shall again be responsible for the performance of all obligations under the License Agreement</u>.

The Consent Agreement further stated:

> Except as specifically set forth herein, nothing shall act as to waive, limit or otherwise alter any obligation or liability that the Company [Sarah LLC] and/or its principals, owners, members, and/or guarantors are subject to or arising from the License and Retail Operator Agreement, the Lease Agreement and/or any Guaranty, undertaking or promise thereunder.

<u>Joint Hearing Ex. 103</u>, Section 7.

Thus, under the plain terms of the Consent Agreement to Italnord's management of the store, Sarah and its principals acknowledged and agreed that the agreements with Italnord did NOT relieve Sarah and its principals of their ongoing, underlying contractual obligations to Forall under the License Agreement. (Under these circumstances, Sarah's current arguments based upon theories of termination, waiver, novation, or course of dealing are completely obliterated.)  Prior to the end of the term of the Management Agreement, Italnord notified Sarah that it was exercising its option to terminate the Management Agreement and turned the store back to Sarah to operate thereafter.  *See* Notice dated September 29, 2014 attached at Joint Hearing <u>Exhibit 146.</u>

Sarah did in fact take back the store in or around January 2015 and operated the store for several months.  Notably, Respondents conspicuously fail to mention this fact in their demand for arbitration, in which they claim, falsely, that the Italnord APA operated as a novation and waiver of any further rights and obligations under the License Agreement and/or related to the store.  The truth was that Respondents knew full well that they were responsible to continue to operate the store both under the License Agreement with Forall, and the Lease with the Landlord.

### E. Forall Assumes Management of the Store Pursuant to a Management Agreement <u>dated February 9, 2015 with Sarah</u>

In March 2015, as part of its ongoing good faith efforts to mitigate its damages and work with Sarah to make the Las Vegas store a success, Forall agreed to take over management of the Pal Zileri store, pursuant to a Management Agreement dated February 9, 2015, for a term of eighteen (18) months.  *See* Forall Management Agreement at <u>Ex. 8</u>.

Similar to the Italnord agreement, the Forall Management Agreement placed all responsibility for the operations of the store and Lease on the manager (in this case Forall) for the period covered by the Management Agreement, but once again it expressly preserved and <u>did not</u> relieve or otherwise release Sarah and its guarantors from the obligations of the License Agreement after the term.  *See* Joint Hearing <u>Ex. 8</u>, Sections 2.1 – 2.4, 5.10 and 5.15.  Sarah signed onto this Agreement and was therefore fully aware that its duties to Forall under the License Agreement and associated Guarantees remained intact and were not

waived, revoked, "novated," or otherwise terminated by the Management Agreement.  (Once again, Sarah's claims to the contrary are refuted by the plain language of the operative agreements that Sarah signed.)

Thereafter, Forall operated the Pal Zileri store until February 2016, at which time Forall requested an extension of the notice date set forth in Management Agreement by which to advise Sarah whether Forall intended to assume the operation and ownership of the store and Lease or to terminate the Management Agreement and turn the store back over to Sarah.

Inexplicably, Sarah did not respond to Forall's initial request for an extension of time, so Forall sent a letter dated February 25, 2016, asking again for an extension of time on the notice date set forth in paragraph 2.4 of the Management Agreement.  Again, Sarah failed to provide *any* response to Forall's request, although Sarah's attorney confirmed receipt of the letter.

Forall was, at that time, weighing all options relative to the Pal Zileri store, including but not limited to taking a different space in the mall at a lower monthly rent.  *See* Decl SJB Ex. G, Tr. Torello-Viera, 10/28/2020, pgs. 290-293.  This, too, would have potentially ultimately assisted Sarah, by lowering monthly rental expenses for the balance of the term of the License Agreement.  However, Sarah still remained silent, leaving Forall with few choices but to terminate the Management Agreement.

Having had no response from Sarah to Forall's reasonable request, Forall advised Sarah formally, by letter dated March 9, 2016, that the Management Agreement would terminate September 1, 2016, and that Sarah was therefore responsible under the License Agreement (and by the terms of the Management Agreement as well) to assume and resume operations of the store and to meet all of the attendant obligations under the License Agreement for the balance of the contract term.  *See* Forall letter dated March 9, 2016, at Joint Hearing Ex. 156.  This letter expressly stated that Sarah needed to place orders for the Fall/Winter 2016 line and to do so that the product would be in the store in time for the season.  *Id.* Sarah did not respond to this letter either.

On June 1, 2016, counsel to Forall wrote to Sarah's counsel stating that there had been no response and that it was imperative that Sarah confirm that it would be prepared to take over and resume operations of the store and lease effective September 1, 2016.  *See* letter from Stephen J. Brown dated June 1, 2016, at Joint Hearing Ex. 240.  No response was provided by Sarah or counsel.

G.     **Sarah Unilaterally and Without Notice to Forall Surrendered the Lease to the Landlord on June 14, 2016 and Stipulated to an Eviction Proceeding Throwing Forall out of the Pal Zileri Store, Causing an Emergency Exit and Shuttering of the Store and Loss of Business and Additional Damages to Forall**

As Forall would come to later learn, Sarah and the Individual Guarantors agreed with the Landlord as early as <u>June 14, 2016</u>, to surrender the Lease, and they subsequently stipulated to an eviction warrant to evict Forall from the premises – despite the fact that Forall was rightfully in possession of the premises and was at that time still operating the Pal Zileri store pursuant to the parties' Management Agreement, up and through September 1, 2016!

Indeed, in hindsight, it is believed that Sarah had already decided to repudiate its contractual obligations to Forall and was actively trying to locate and did in fact locate a replacement tenant to take over the space; Sarah may have even gotten key money to vacate (or provide the premises) to the Landlord early. This would explain why Sarah was ignoring Forall's communications, including their requests for an extension of time on the Management Agreement and other requests.

The Respondents' allegations, in their demand for arbitration and Statement of Claims, that Forall did not pay the rent on the Lease and was therefore evicted by the Landlord (thereby damaging Sarah) are patently false and fraudulent – reflecting a bad faith willingness to deceive and fraud the arbitrator and the AAA.

In fact, Sarah knows full well (and has known all along) that Forall was evicted because Sarah and its principals had negotiated with the Landlord behind Forall's back to surrender the Lease and to consent to the eviction.  As set forth in the annexed "Agreement Cancelling Lease" between Forum Shops, LLC and Sarah, LLC d/b/a "Pal Zileri", Respondent Suhad Albasha executed the agreement with the Landlord on <u>June 14, 2016</u>, thereby cancelling and surrendering the Lease and premises effective July 31, 2016.[1] *See* Agreement Cancelling Lease at <u>Ex. 151</u>.

The Landlord commenced an eviction proceeding against Forall, based upon Sarah's surrender of the Lease.  Without notice to Forall, Sarah then stipulated to the entry of Court ordered permanent writ of

---

[1]     Indeed, Forall later learned that a replacement tenant had been located to take possession of the premises. Upon information and belief, Sarah and/or the Guarantors received money and/or other consideration to surrender the Lease early.

restitution of the Leased premises.  *See* letter dated August 1, 2016 from Kevin R. Stolworthy, Esq. to Forall with civil summons and notice at Joint Hearing Exs.159, 160 and 161.

In taking these actions, Sarah and its principals not only breached the Management Agreement with Forall.  They also, once again, violated the terms of the License and Management Agreements – which expressly stated that Sarah could not terminate the lease for the store without prior notice to, and consent from Forall.  Decl. SJB Ex. B, Art. 11, *etc.*

As a result of Respondents' egregious and bad faith breach of both the License and Management Agreements, Forall was evicted and had no choice but to close the store, lay off employees, discount/write-down inventory, and vacate the premises, at massive business disruption and cost in August, 2016.  Forall was severely damaged and had to close the Pal Zileri store almost literally overnight – causing a massive business disruption, employee layoffs, loss of product, attorneys' fees and costs, and harm to Forall's reputation and the Pal Zileri brand.  Sarah did not resume operation of the Pal Zileri store and never responded to any of Forall's multiple attempts to settle these differences or compensate Forall for its substantial losses.   Rather, Sarah and the Guarantors commenced this arbitration – apparently in an effort to (once again) sidestep its clear contractual obligations and its liability for its flagrant breach of same.

## LEGAL ARGUMENT

### 1.  THIS COURT HAS JURISDICTION OVER THIS PROCEEDING AND SHOULD ENTER AN ORDER AND JUDGMENT CONFIRMING THE ARBITRATION AWARD.

The Court has authority to confirm the arbitration Award pursuant to the Federal Arbitration Act ("FAA") 9 U.S.C. § 9.  This Court has jurisdiction over the parties and this matter; the parties agreed by contract to litigate their claims through Arbitration; the parties did in fact arbitrate their differences; the Arbitrator issued an Award in Petitioner's favor; and the parties' contractual agreement states that the Award may be entered and enforced in any state or federal court having competent jurisdiction.

Confirmation of the Award is proper in this case. "Arbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputesefficiently and avoiding long and expensive litigation." *E.g. Rai v. Barclays Capital Inc.*, 739 F.Supp.2d 364, 370 (S.D.N.Y. 2010), *citing Willemijn Houdstermaatschappij, BV v. Standard Microsystems*, 103 F.3d 9, 12

(2d Cir.1997); *see also, Local 1199, Drug, Hosp. & Health Care Employees Union v. Brooks Drug Co*.,

956 F.2d 22, 24 (2d Cir.1992) ("*Local 1199*").

Indeed, the public policy interest in confirming arbitration awards is so established that the Court

of Appeals for the Second Circuit "adhere[s] firmly to the proposition ... that an arbitration award should

be enforced, despite a court's disagreement with it on the merits, if there is a '*barely colorable justification*

*for the outcome reached.*'" *Landy Michaels Realty Corp. v. Local 32B-32J,* 954 F.2d 794, 797 (2d Cir.1992);

*see also, Local 1199*, 956 F.2d at 25 ("[T]he court is forbidden to substitute its own interpretation even if

convinced that the arbitrator's interpretation was not only wrong, but plainly wrong.") (Internal quotations

omitted).

The Award in this proceeding meets the legal standard for confirmation. As demonstrated herein,

the Arbitrator was duly appointed by the American Arbitration Association ("AAA") with the parties'

consent. The Arbitrator provided ample discovery, an extended evidentiary hearing, extensive post-hearing

briefing followed by oral argument. The Arbitrator applied the law to the facts and rendered the award

against the Respondents accordingly.  Consequently, the Award must be confirmed.

## 2.  RESPONDENTS ARE RESPONSIBLE FOR LOST PROFIT DAMAGES TO FORALL ARISING FROM SARAH'S BREACH OF THE LICENSE AND MANAGEMENT AGREEMENTS

As a preliminary matter, New York law governs this dispute pursuant to Article 17 of the parties'

License Agreement.  The term of the License Agreement was for a period of ten (10) years, through March

2021. Ex. B, Art. 2.7.  The License Agreement required Sarah to operate the Pal Zileri store for that term

and to make minimum purchases of $900,000 per year of Pal Zileri product for Spring / Summer and

Fall/Winter collections.  Decl. SJB Ex. B, Art. 4.2.

Sarah was contractually obligated but failed to take back operation of the store in September 2016

(following Forall's management of the store under the parties' Management Agreement).  In fact, Sarah

breached multiple provisions of both the License Agreement and Management Agreement when it voluntary

cancelled the Lease and surrendered the premises to the Landlord in June / July 2016 – during the term of

Forall's Management Agreement.  *See* Ex. B, Art. 11.1.5, 11.9.4; Joint Hearing Ex. 3 (Collateral Assignment

of Lease); Ex. 8 (Management Agreement) 5.12.

Under New York law, "general damages are the natural and probable consequence of the breach of the contract." *Biotronik A.G. v. Conor Medsystems Ireland, Ltd.*, 22 N.Y.3d 799 (N.Y. 2014) (internal quotations and citations omitted). General damages "include money that the breaching party agreed to pay under the contract." *Id. citing Tractebel Energy Marketing, Inc., v. AEP Power Marketing, Inc.*, 487 F.3d. 89, 2019 (2d Cir. 2007). In the context of a distribution agreement, New York courts have held that general damages include lost profits under the agreement upon a breach. *See Biotronik, supra*, 806-807. These general damages should not be confused with consequential damages, which Forall is not seeking here. Forall is entitled to the benefit of its bargain with Sarah.

The Court of Appeals, Second Circuit, discussed the appropriate damages in a breach of minimum purchase contract action in *Tractebel Energy Marketing, Inc., supra*, as follows:

> By contrast, when the non-breaching party seeks only to recover money that the breaching party agreed to pay under the contract, the damages sought are general damages. *See Am. List Corp. v. U.S. News & World Report, Inc.*, 75 N.Y.2d 38, 44, 549 N.E.2d 1161, 550 N.Y.S.2d 590 (1989). The damages may still be characterized as lost profits since, had the contract been performed, the non-breaching party would have profited to the extent that his cost of performance was less than the total value of the breaching party's promised payments. But, in this case, the lost profits are the direct and probable consequence of the breach. *See id.* The profits are precisely what the non-breaching party bargained for, and only an award of damages equal to lost profits will put the non-breaching party in the same position he would have occupied had the contract been performed. *See id.*

*Tractebel Energy Marketing, Inc.*, 487 F.3d. at 109-110.

Also, consistent also with the New York Uniform Commercial Code (UCC) Section 2-708 and 2-710 which governs the sale of goods, the appropriate measure of seller's damages in this type of case for a non-acceptance or repudiation by a breaching purchaser is "is the profit (including reasonable overhead) which the seller would have made from full performance by the buyer, together with any incidental damages provided in this Article (Section 2-710), due allowance for costs reasonably incurred and due credit for payments or proceeds of resale." UCC 2-708(2); see also UCC 2-703 and 2-710 (seller's incidental damages include any commercially reasonable charges and expenses in connection with the return or resale of goods or otherwise resulting from the breach.).

In this case, the damages the Arbitrator properly found and held that the lost profits arising from Sarah's breach of the License Agreement and include Forall's lost profit (the difference of the selling price to

Sarah and the cost to produce and transport the goods) on the annual minimum product purchases of the Pal Zileri product set forth in the License Agreement for the remaining term of the License Agreement – in this case, Forall's margin on the $900,000 minimum annual purchases for the period of September 2016 through March 2021.

Consequently, as held by the Arbitrator, the Respondents are obligated to pay to Forall the benefit of Forall's bargain in this case.

### 3. FORALL HAS ADEQUATELY SUPPORTED THE DAMAGES IT SUSTAINED ARISING DIRECTLY FROM SARAH'S BREACH OF THE PARTIES' RESPECTIVE AGREEMENTS.

Forall has adequately supported the damages claimed in this case and more specifically as calculated and set forth in the Expert Damages Report of Kevin Flaherty.  As stated in *Tractebel Energy Marketing, Inc.*, 487 F.3d. 89, which involved the breach of a 20-year minimum purchase agreement, the "plaintiff need only show a 'stable foundation for a reasonable estimate' of the damage incurred as a result of the breach." *Id.* quoting *Contemporary Mission, Inc. v. Famous Music Corp.*, 557 F.2d 918, 925 (2d. Cir. 1977) (applying New York law).

More specifically, and instructive here, the Second Circuit explained:

> It has long been established in New York that a breaching party is liable for all direct and proximate damages which result from the breach. *Wakeman v. Wheeler & Wilson Mfg. Co.*, 56 Sickels 205, 209, 101 N.Y. 205, 4 N.E. 264, 266 (1886).  The damages, however, "must be not merely speculative, possible, and imaginary, but they must be reasonably certain and such only as actually follow or may follow from the breach of the contract." *Id.* (emphasis added). "Certainty," as it pertains to general damages, refers to the fact of damage, not the amount.  For "when it is certain that damages have been caused by a breach of contract, and the only uncertainty is as to their amount, there can rarely be good reason for refusing, on account of such uncertainty, any damages whatever for the breach. A person violating his contract should not be permitted entirely to escape liability because the amount of the damage which he has caused is uncertain." *Id.*

> "[T]he burden of uncertainty as to the amount of damage is upon the wrongdoer…" *Contemporary Mission, Inc. v. Famous Music Corp.*, 557 F.2d 918, 926 (2d. Cir. 1977) (applying New York law). "The plaintiff need only show a 'stable foundation for a reasonable estimate'" of the damage incurred as a result of the breach.  *Id.* (*quoting Freund v. Washington Square Press, Inc.*, 34 N.Y.2d 379, 383, 314 N.E.2d 419, 357 N.Y.S.2d 857 (1974)).  "Such an estimate necessarily requires some improvisation, and the party who has caused the loss may not insist on theoretical perfection." *Entis v. Atl. Wire & Cable Corp.*, 335 F.2d 759, 763 (2d Cir. 1964).

*Tractebel Energy Marketing, Inc.*, 487 F.3d. at 110 – 112 (footnotes omitted).

In this case, as in *Tractebel*, the contract calls for a minimum purchase amount for a set period of years over the term of the agreement.  Forall is entitled to recover the difference of the cost of its goods and the selling price to Sarah.  There is credible and sound testimony in the record by both Palma Settimi (who has extensive industry experience and represents numerous luxury brands and provides back office and accounting functions for many wholesale and retail clients) and Michelle Gioffre, a CPA who has worked for many years with Forall and has firsthand familiarity with Forall's and other luxury brand's costs of goods, margin on sales, as well as financials and business.  *See* Tr. P. Settimi, 10/28/2020, pgs. 94 – 98; Tr. Michelle Gioffre, 10/28/2020, pgs. 114-128.  The testimony at the hearing from these witnesses was that Forall generally had a 50% margin of its goods, which included the cost of goods and other costs including shipping and duties.  Thus, when asked at the hearing, Ms. Gioffre responded as follows:

```
 9.     Q. Miss, in the circumstance where
10     there's a $900,000 annual sale for this
11     store in Las Vegas, and assuming the 45
12     to 50 percent margin or cost for the
13     items that are sold, would it be fair
14     to say that there is a profit that
15     would be expected or anticipated on
16     each one of these annual sales of the
17     $900,000 to the Las Vegas store?
18            A. Yes. Of course.
19            Q. Profit of $450,000 less
20     advertising expense?
21            A. Yes. That would be reasonable,
22     yes.
```

Decl. SJB <u>Ex. G</u>, Tr. M. Gioffre, 10/28/2020, pg. 128.

Similarly, the Forall's damages expert Mr. Kevin Flaherty did considerable work on testing and coming to a 50% margin on Forall's sales to Sarah.  Mr. Flaherty's report dated February 12, 2020 adequately sets forth his method and assumptions in allotted material cost at a margin percentage of 48.92% at schedule 3 of his report, which includes the advertising costs that were required under the parties' agreement.

Mr. Flaherty also testified at hearing as to his assumptions and conclusions as well as what he relied upon in preparing his report and coming the damages calculations provided.  See Schedules 2 and 3 of the Flaherty Report at <u>Ex. 38</u>.  Testimony at the hearing demonstrated that Mr. Flaherty's calculations of Forall's

costs of goods was accurate.  Under the License Agreement, Forall's margin consisted of manufacturing, shipping and duties costs only.  Testimony confirmed that the "margin" or profit factor for the minimum purchase of $900,00 a year were approximately fifty (50%) percent.  Tr. Torello-Viera 10/28/20 p. 190. Forall's cost for product would range between thirty-five (35) to forty (40%) with duty and freight added to the Forall's cost allowing for profit margin of forty-five (45) to fifty (50%).  Decl. SJB Ex. G, Gieffore Tr. 10/29/20, p. 95, 93.

Forall's expert, Kevin Flaherty testified in detail as to the damages incurred by Forall as a result of Sarah's breach of contract including last profits over the period of 2016 through 2021 which constituted the remaining term of the contract and calculated such loss as $2,177,100.

Further, testimony established that the inventory on hand when the Las Vegas store closed had to be disposed of in a precipitous fashion resulting in a conservative estimate of ten (10%) percent loss.  Tr. Torello-Viera, 10/29/20 p. 182.  In particular the "stranded" inventory on hand at the time of the store closing was $773,811 resulting in a loss of $77,381 in this market.

This Report and the supporting testimony is credible and reasonable under the circumstances. Moreover, under the New York case law cited above, the plaintiff need only show a "stable foundation for a reasonable estimate" of the damages sustained.  Forall did just that.  Of course, these damages stated above do not include other proximate and incidental damages such as attorneys' fees, interest, costs, etc., which are also properly awarded in this action.

### 4. AT NO TIME DID FORALL WAIVE SARAH'S PERFORMANCE UNDER THE LICENSE OR MANAGEMENT AGREEMENTS AND THE CONTRACTS ALL EXPRESSLY STATE THAT NO WAIVER SHALL BE IMPLIED.

It is well established under New York law that a "contract should be read to give meaning and effect to each of its provisions." *See Perlbinder v Board of Mgrs. of 411 E. 53rd St. Condominium*, 65 AD3d 985, 986-987 (1st Dept 2009).  As such, non-waiver provisions in contracts "are uniformly enforced". *Awards.com v Kinko's, Inc.*, 42 AD3d 178, 188 (1st Dept 2007).  Thus, even while a party may accept partial performance or not enforce a contractual right for past conduct, the non-breaching party retains the right to require full performance for any subsequent breaches given the existence of a non-waiver provision in the parties' contract.  *Id.* at 188-189.

In the instant case, all of the applicable agreements between Forall and Sarah contained non waiver clauses which Sarah was well on notice of and agreed to at each step of the parties' dealings.  Article 17 of the License Agreement states:

> Non-Waiver. No failure of Forall to exercise any power reserved to it hereunder, or to insist upon strict compliance by Operator with any obligation or condition hereunder, and no custom or practice of the parties at variance with the terms hereof, shall constitute a waiver of Forall's right to demand exact compliance the terms hereof. Waiver by Forall of any particular default by Operator shall not be binding unless in writing and executed by Forall shall not affect or impair Forall's rights in respect to any subsequent default of the same or a different nature; nor shall any delay, waiver, forbearance, or omission of Forall to exercise any power or rights arising out of any breach or default by Operator's rights nor shall such a waiver by Forall of any right hereunder or of the right to declare any subsequent breach or default Subsequent acceptance of Forall of any payment due to it hereunder shall not be deemed to be a wavier by Forall of any proceeding breach by Operator of any terms, covenants or conditions of this Agreement.

Likewise, the Consent Agreement dated September 2013 (Joint Hearing Ex.12, ¶11) relating to Italnords' management of the store and the Forall Management Agreement (Joint Hearing Ex. 14, ¶ 5.1), contain similar non-waiver language expressly reserving Forall's right to enforcement of all contractual rights.

Thus, despite Sarah's contentions to the contrary, at no time did Forall waive compliance and performance under the parties' License Agreement and subsequent agreements.  Rather, by the terms of the agreements, Forall expressly stated that no waiver was intended nor was implied and these provisions must be given effect.

## 5. FORALL IS ENTITLED TO RECOVER REASONABLE ATTORNEYS' FEES AND COSTS ASSOCIATED WITH THIS PROCEEDING.

Forall is entitled to recover attorneys fees and costs as the prevailing party to this action under the parties' License Agreement.  See Ex. B, Section 17.4.  The Award properly ordered the Sarah parties to pay Forall for these costs and fees.

Moreover, and in addition, Forall is entitled to recover the costs associated with this Petition to Confirm the Award and any fees to recover on the judgment and Forall seeks the opportunity to submit an affirmation of legal services for an award at some later date to this Court.

## 6. MISCELLANEOUS POINTS OF LAW

i.      The License Agreement contains a valid and binding provision stating that no oral modifications of the Agreement are enforceable and that all modifications therefore must be in writing.  See

Ex. 1, Art. 17.7.  This is a valid and binding provision that must be enforced here and defeats Respondents' contention that the parties' course of conduct served so as to modify the contractual obligations of Sarah.

ii.      The License Agreement contains an integration clause which states that the Agreement is the full agreement by and between the parties and Forall has made no representations or inducements (and Sarah has not relied upon any such representations or inducements) other than those set forth in the Agreement. *See* Ex. 1, Art. 17.7.  This integration clause must be given its full effect.

iii.      The Guaranty executed by each of the Guarantors is valid and binding and must be enforced. *See Poah One Acquisition Holdings Ltd. v. Armenta*, 96 A.D.3d 560 (1st Dept 2012).

## CONCLUSION

For the foregoing reasons, Forall respectfully seeks an order and judgment from this Court confirming the Award of the Arbitrator in this proceeding as more specifically set forth in the Petition.

Dated:  White Plains, New York
        March 30, 2021

BLEAKLEY PLATT & SCHMIDT, LLP

By:___/s/ *Stephen J. Brown*_____
        Stephen J. Brown (SJB 4903)
        *Attorneys for Petitioner*
        One North Lexington Avenue
        White Plains, NY 10601
        Tel. No.: (914) 949-2700