**AMERICAN ARBITRATION ASSOCIATION**
**COMMERCIAL ARBITRATION TRIBUNAL**

------------------------------------------------------------------x
Sarah LLC, Hala Subh, Suhad Albasha,
Bachar Hamad and Amar Hamad,

                              Claimants,        **Case No. 01-18-0000-6180**

-against-

Forall USA, Inc.,

                              Respondent.
------------------------------------------------------------------x

## <u>AWARD OF ARBITRATOR</u>

THE UNDERSIGNED ARBITRATOR, having been duly designated in accordance with the arbitration agreement entered into by and among Claimants Sarah LLC ("Sarah"), Hala Subh, Suhad Abasha, Bachar Hamad and Amar Hamad (referred to as "Claimants") and Respondent Forall USA, Inc. ("Forall") dated March 19, 2011 and having been duly sworn and having presided over document exchange, four days of hearings by ZOOM[1] on October 26, 27, 28 and 29, 2020, and having received in evidence hundreds of exhibits and having reviewed pre-arbitration briefs and post arbitration briefs, and having presided over closing argument by ZOOM, and Claimants having been represented by Rodney Lewis and Sohil Shah, Esqs. of the Polsinelli firm and Forall having been represented by Stephen Brown and Vincent Crowe, Esqs. of

---

[1] Upon consent of both sides, the evidentiary hearings and closing argument were held by ZOOM pursuant to the American Arbitration Association Virtual Hearing Guide for Arbitrators and Parties and the American Arbitration Association Virtual Hearing Guide for Arbitrators and Parties Utilizing ZOOM.
AAA Case No. 01-18-0000-6180

Bleakley Platt & Schmidt, upon due deliberation, the Arbitrator hereby renders this Award.  Based upon my evaluation of the credibility of the witnesses and my analysis of the documentary evidence, I Find and Award that:

1.  Claimants' claims are denied.

2.  Forall's counterclaims I through IV are granted and Forall is granted an award in the amount of $2,177,100.00 lost profits, $77,381.00 regarding stranded or devalued inventory, $44,003.00 for expenses in connection with the premature closure of the Las Vegas Store, costs and attorneys' fees.

## BACKGROUND

Sarah is a limited liability company formed by two brothers who are physicians from Chicago, Dr. Amar Hamad and Dr. Bachar Hamad and their wives.  The purpose of forming Sarah was to invest in the ownership of a store in Las Vegas, Nevada (the "Las Vegas Store") to sell very high-end men's clothing manufactured by the parent of Forall. The Las Vegas Store was located in the Forum Mall at Caesar's Palace in Las Vegas and was owned by Simon Properties ("Simon").  The two doctors and their wives, Hala Subh and Suhad Albasha, signed a Personal Guaranty of the obligations of Sarah under a License and Retail Operator Agreement (the "License Agreement") entered into with Forall in March 2011.

Pal Zileri is a very high end men's fashion design clothing brand produced in Italy. Pal Zileri competes with Canali, Ferragamo, and other very expensive brand names.  The Pal Zileri line of men's fashions is manufactured by Forall's parent company in Italy. Forall had a showroom in the United States but wanted to create a U.S. retail operation as well.

AAA Case No. 01-18-0000-6180

## THE LICENSE AGREEMENT

In March 2011, Sarah and Forall entered into the License Agreement for a term of 10 years to establish and operate a retail operation in the Las Vegas Store.  The License Agreement required Sarah to buy Pal Zileri merchandise from Forall and to enter into a lease with Simon for the Las Vegas Store.  Section 4.2 of the License Agreement stated as follows:

> "4.2 Operator shall place a minimum order of Four Hundred Thousand ($400,000.00) Dollars for Spring/Summer and Five Hundred Thousand ($500,000.00) Dollars for Fall/Winter for a total of Nine Hundred Thousand ($900,000.00) Dollars per calendar year."

The amount to be paid for the minimum purchase requirement was initially reduced in that Section 4.6 of the License Agreement stated that Forall granted Sarah a 20% discount for the first year, which contained two seasons and a 10% discount for the second year.  The minimum purchase requirement was intended to force Sarah to buy from Forall the current merchandise for each Spring/Summer and Fall/Winter season for the 10-year period.  In addition to these discounts, Article 5 of the License Agreement provided that Forall would pay for 50% of the remodeling cost for the Las Vegas Store by giving another 20% discount on all orders until 50% of the remodeling cost was reached.

Section 8.4 of the License Agreement provided that during the first year of the License Agreement, Sarah agreed to spend $27,000.00, 3% of the $900,000.00 annual minimum purchase amount, for advertising and promotion and Forall agreed to match this $27,000.00.  Section 12.2 stated that Sarah's interest in the License Agreement could not be pledged, transferred or assigned to any third party without the prior written consent of Forall.  Section 17.1 stated that New York law applied and Section 17.2 was

AAA Case No. 01-18-0000-6180

3

an arbitration clause.  Section 17.4 stated that if Forall prevailed in any suit to enforce

any provision of the License Agreement, Forall was entitled to receive its costs including

reasonable attorneys' fees.

Section 17.5 of the License Agreement was a non-waiver provision, which stated

as follows:

> "17.5 <u>Non-Waiver</u>.  No failure of Forall to exercise any power reserved to it hereunder, or to insist upon strict compliance by Operator with any obligation or condition hereof, shall constitute a waiver of Forall's right to demand exact compliance the terms hereof.  Waiver by Forall of any particular default by Operator shall not be binding unless in writing and executed by Forall shall not affect or impair Forall's rights in respect to any subsequent default of the same or a different nature; nor shall any delay, waiver, forbearance, or omission of Forall to exercise any power or rights arising out of any breach or default by Operator's rights nor shall such a waiver by Forall of any right hereunder or of the right to declare any subsequent breach or default."

Section 17.7 stated as follows:

> "17.7 <u>Entire Agreement</u>.  This Agreement shall constitute the entire full and complete agreement between the parties concerning the subject matter hereof.  No other representation has been relied upon by Operator or its directors, officers or shareholders, or induced Operator to execute this Agreement and there are no representations, inducements, promises, or agreements, oral or otherwise, between the parties not embodied herein, which are of any force or effect with reference to this Agreement or otherwise.  No amendment, change or variance from this Agreement shall be binding unless executed in writing."

Section 18.1 was an acknowledgment by Sarah that it entered into the License

Agreement after making an independent investigation of Forall's operations and not in

reliance upon or as a result of a representation as to gross revenues, volume, potential

earnings or profits, which Sarah might be expected to realize. It further stated that no

one made any other representation which is not expressly set forth in the License

Agreement on which Sarah or shareholders, officers or directors relied to induce Sarah

to accept the License Agreement.  Section 18.2 of the License Agreement stated that

each of the doctors and each of their wives executed a Guaranty for the obligations of

Sarah.

      The License Agreement and related documents, including the Guaranty, were

negotiated by

and Forall, who were each represented by their own counsel.  One of the related

documents was a Collateral Assignment of Lease pursuant to which Sarah gave Forall

a security interest in the lease with Simon for the Las Vegas Store

Section 3(d) of the Collateral Assignment of Lease stated as follows:

> "(d) So long as this Assignment remains in effect, Assignor [Sarah] will
> not, without Assignee's [Forall's] prior written consent, sell, assign,
> convey, pledge, encumber or otherwise transfer to any other person, firm
> or entity any interest in the Lease."

      The Guaranty executed by Dr. Amar Hamad,  Dr. Bachar Hamad, Hala Subh and

Suhad Albasha stated that the guarantor "unconditionally, jointly and severally,

guarantees to the Company [Forall], its successors and assigns, the prompt full

payment and performance of all obligations of the Operator [Sarah]..."

      It is undisputed that soon after execution of the License Agreement, Sarah

entered into a lease with Forum Shops, LLC, (the "Lease") for very favorable space in

the Forum Mall in Las Vegas.  The space was located right near the very high-end

men's fashion shops in a central highly traveled area of the mall.  It is also undisputed,

except for $38,000.00, that by way of discount, Forall contributed $512,639.00 for the

build-out of the Las Vegas Store.

      In September 2011, the Pal Zileri store opened at the Forum Shop Mall in

Caesar's Palace.  Soon thereafter, in February 2012 the parties entered into another

AAA Case No. 01-18-0000-6180

License Agreement - Internet Site & Sales of Licensed Products (the "Internet License Agreement") allowing Sarah to establish a website for Pal Zileri products in the United States and to sell those products on the internet.  It is undisputed that Sarah never did so.

## THE ITALNORD MANAGEMENT AGREEMENT

By letter dated January 28, 2013, Dr. Bachar Hamad wrote to Forall that: "Sarah has found that operating the store in a profitable manner to be a near impossibility.  This conclusion has come despite the best efforts of all parties involved, as well as the fine cooperation between Sarah and Forall USA Inc. as well as the whole operation of Pal Zileri." (Exhibit R 120).  This January 18, 2013 letter from Dr. Bachar Hamad further stated that Sarah did not intend to breach the License Agreement but it raised the possibility of Forall taking over the operation of the Las Vegas Store or finding a new operator.  Significantly, although the letter referred to the best efforts of all parties, and noted the "fine cooperation between Sarah and Forall", nothing was said about any complaint by Sarah against Forall.  No complaint was made by Dr. Bachar Hamad against Forall for delivering the wrong merchandise, late deliveries, failure to pay its share of remodeling expense or failure to pay any advertising expense.

By letter dated February 21, 2013, Forall responded that it did not wish to take over operation of the store, but that "Forall will try, without any commitment and full reservation of rights under the Agreement, to find a new operator of the store."

In early June 2013, Dr. Bachar Hamad advised Forall that Sarah intended to transfer the Las Vegas Store back to Simon and terminate the Lease as of October 1, 2013.  Forall protested this action and advised that it did not consent to any proposed

AAA Case No. 01-18-0000-6180

transfer and was reserving all rights.  Forall also stated that such a transfer was an anticipatory breach of the License Agreement.  Sarah did not then transfer the Las Vegas Store back to Simon.

Thereafter, Forall introduced Sarah's principals to Mr. Alfonso Entebi, the principal of Italnord Forum, LV ("Italnord"), which successfully ran Pal Zileri shops in Mexico and other Latin American areas.  Negotiations ensued and resulted in a transaction between Italnord and Sarah effective as of September 1, 2013.  Italnord and Sarah entered into a Management Agreement (the "Italnord Management Agreement") such that Italnord agreed to manage the Las Vegas store from September 10, 2013 to January 31, 2015.  The Italnord Management Agreement was executed after negotiations with and drafting by counsel for each side.  Sarah and Italnord also entered into an Asset Purchase Agreement, pursuant to which the furniture, fixtures, equipment and other personal property in the Las Vegas Store were sold from Sarah to Italnord, which paid Sarah $140,000.00.  Additionally, Italnord agreed to pay Sarah for the refundable rent deposit with Simon of $65,000.00 and $38,000.00, which was due from Forall for final payment of Forall,'s required contribution for the construction build out of the Las Vegas Store.

In September 2013, Forall and Sarah entered into a separate agreement (the "Forall Consent Agreement") pursuant to which Forall consented to the operation of the Las Vegas Store by Italnord.  Again, both sides were represented by counsel who drafted and negotiated the final executed Forall Consent Agreement.  Paragraph 3 of the Forall Consent Agreement stated as follows:

> "3. During the term of the Management Agreement only, Forall shall look
> to the Manager [Italnord] and hold the Manager responsible for the

AAA Case No. 01-18-0000-6180

7

performance of all obligations under the License Agreement.  To the extent that the Management Agreement is terminated, at such time, the Company [Sarah] shall again be responsible for the performance of all obligations under the License Agreement."

Paragraph 7 of the Forall Consent Agreement repeated that there was no waiver or limitation of the obligations of Sarah or its guarantors from any of its obligations under the License Agreement.  Paragraph 11 repeated that no failure of Forall to exercise any of its rights under the License Agreement constituted a waiver of any such rights.  The Forall Consent Agreement also stated, "No custom or practice of the parties at variance with the terms hereof shall constitute a waiver of Forall's right to demand exact compliance with the terms of the License Agreement or this Agreement."

Unfortunately, Italnord and its owner Alfonso Entebi did not fare better than Sarah. By notice dated September 29, 2014, Italnord notified Sarah that it would cease managing the Pal Zileri store as of January 31, 2015.

## THE FORALL MANAGEMENT AGREEMENT

Soon after receipt of the Italnord notice that it was not going to continue managing the Las Vegas store, Forall entered into negotiations with Sarah and Italnord, such that Forall itself would take over management of the Las Vegas Store.  A Management Agreement was entered into between Forall and Sarah on March 15, 2015 (the "Forall Management Agreement") pursuant to which Sarah appointed Forall as manager of the Las Vegas Store for a period of 18 months up to September 1, 2016. Forall also agreed to advise Sarah on or before March 1, 2016, whether it would take over the Lease and the Pal Zileri business at the Las Vegas Store or terminate the Forall Management Agreement at the end of the initial 18-month term.

Section 5.10 of the Management Agreement stated as follows:

AAA Case No. 01-18-0000-6180

"5.10.  The Management Agreement shall not alter or amend the parties' rights and obligations under the License and Retail Operating Agreement between Sarah and Forall dated March 2011 and Sarah's obligations under the Lease, except that Forall shall assume all lease payments during the Term."

Pursuant to the terms of the Forall Management Agreement, by March 1, 2016 Forall was required to notify Sarah of its intentions regarding whether it wished to take over the Las Vegas Store or terminate the Forall Management Agreement 6 months later, September 1, 2016.  By letter dated February 25, 2016 Forall wrote to Sarah and asked for a 2-month extension to notify Sarah as to whether it intended to take over the Las Vegas Store as of September 1, 2016.  There was no response.  Counsel for Forall also attempted to elicit a response from counsel for Sarah but again there was no response.  According to the testimony, numerous telephone calls were unanswered.  As such, Forall prepared to give up the operation of the Las Vegas Store as of September 1, 2016.

## THE CLOSING OF THE LAS VEGAS STORE

Since Forall did not hear back from Sarah regarding its request for a 60-day extension, on February 25, 2016 Forall notified Sarah that it would not be extending the term of the Forall Management Agreement.  Forall, therefore, wrote to Sarah on March 9, 2016 advising that effective September 1, 2016, Sarah "shall again assume possession of the Pal Zileri store".  Forall also reminded Sarah that under the License Agreement:

"Sarah is responsible to pay an advance for stock inventory in the store and is required to provide adequate inventory in the store at all times. Article 2 of the License Agreement...Article 4 sets forth that Sarah shall place a minimum order of $400,000.00 for the Spring/Summer and $500,000.00 for the Fall/Winter for a total of $900,000.00 per year".

AAA Case No. 01-18-0000-6180

Again, there was no response from Sarah.  Although a year before Sarah entered into discussions with Simon to turn back the Lease and received strong objection and notice from Forall that such action would constitute a breach the License Agreement, Sarah again did exactly the same thing.  Sarah approached Simon and, without the knowledge or consent of Forall, on July 1, 2016 Sarah entered into Agreement Canceling Lease to turn back the Las Vegas lease to Simon.

On July 1, 2016, Forum Malls and Sarah entered into the Agreement Canceling Lease, which stated that as of July 31, 2016 the Lease was cancelled and terminated even though Forall had the right to stay on the premises as manager until September 1, 2016.  When Forall remained on the premises past August 1, 2016, Simon began an eviction proceeding and Sarah executed a stipulation agreeing to the eviction of Forall. On just a few days' notice, Forall had to advise all of its employees at the Las Vegas Store that the Las Vegas Store was closing immediately and that their employment was terminated.  Forall entered into severance agreements with those employees and Forall boxed and shipped all the merchandise in the Las Vegas Store to a warehouse in New Jersey. The Las Vegas store was closed.

## CLAIMS BY SARAH

In January 2018, Sarah commenced this arbitration by filing a Demand for Arbitration, which asserted numerous claims against Forall.  In its pre-arbitration brief and Operating Agreement, Sarah asserted additional claims against Forall.  Sarah sought declarations that it and the guarantors were free of any obligations under the License Agreement and Guaranty because of Forall's breaches and other misconduct as follows:

AAA Case No. 01-18-0000-6180

## FORALL'S WAIVER DUE TO THE ITALNORD CONSENT AGREEMENT

Sarah claimed that Forall's introduction of Italnord to Sarah and Forall's execution of the Forall Consent Agreement constituted a novation, release and/or waiver of all obligations of Claimants to Forall under the License Agreement and Guaranty.  However, as noted above, the License Agreement specifically stated that any waiver must be in writing and there was no such writing.

More significantly, in the Forall Consent Agreement, Forall agreed in writing that Italnord would take over the obligations of Sarah in accordance with the Italnord Management Agreement.  The Forall Consent Agreement was negotiated by counsel for Claimants and counsel for Forall and signed by Sarah and Forall.  It specifically stated at paragraph 2 that Sarah "shall continue to be responsible for and will remain in compliance at all terms under the lease agreement".  It also stated at paragraph 3 that "To the extent that the Management Agreement is terminated, at such time, the Company [Sarah] shall again be responsible for the performance of all obligations under the License Agreement."

Section 7 of the Forall Consent Agreement stated as follows:

"7.  Except as specifically set forth herein, nothing shall act to waive, limit or otherwise alter any obligation or liability that the Company [Sarah] and/or its principals, owners, members, and/or guarantors are subject to or arising from the License and Retail Operator Agreement, the Lease Agreement, and/or any Guaranty, undertaking or promise thereunder."

Similarly, paragraph 11 of the Forall Consent Agreement stated as follows:

"11. No failure of Forall to exercise any power reserved to it under the License Agreement or this Agreement, or to insist upon strict compliance by Company or Manager with any obligation or condition, and no custom or practice of the parties at variance with the terms hereof, shall constitute a waiver of Forall's right to demand exact compliance the terms of the License Agreement or this Agreement.  Waiver by Forall of any particular

default by Company or Manager shall not be binding unless in writing and executed by Forall."

Based upon the explicit language of the Forall Consent Agreement, Claimants' argument of novation, release and/or waiver must be rejected.  It is impossible to conclude that by executing an agreement pursuant to which Forall and Sarah agreed that none of Forall's rights were being waived, Forall nevertheless waived such rights. In the Forall Consent Agreement, Sarah specifically agreed that Forall was not waiving its rights under the License Agreement.  Sarah's claims that Forall's actions in connection with the Italnord transaction constituted a novation, release or waiver must, therefore, be denied.

### FORALL'S WAIVER DUE TO THE FORALL MANAGEMENT AGREEMENT

In its Demand for Arbitration, Sarah and its guarantors also claimed that because Forall agreed to take over management of the Las Vegas store in March 2015, such conduct also constituted a novation, release and/or waiver of Claimants' obligations under the License Agreement and Guaranty.  However, on February 9, 2015 following negotiations and drafting by counsel, both Sarah and Forall executed the Forall Management Agreement, pursuant to which Forall assumed "exclusive management and control" of the Las Vegas Store.  As noted above, Section 5.10 of the Forall Management Agreement specifically stated that:

> "5.10.  The Management Agreement shall not alter or amend the parties' rights and obligations under the License and Retail Operating Agreement between Sarah and Forall dated March 2011 and Sarah's obligations under the Lease, except that Forall shall assume all lease payments during the Term."

Section 5.15 of the Forall Management Agreement stated as follows:

> "5.15.  Except as specifically set forth herein, nothing shall act as to waive,

limit or otherwise alter any obligation or liability that the Company and/or its principals, owners, members, and/or guarantors are subject to or arising from the License and Retail Operator Agreement, the Lease Agreement, and/or any Guaranty, undertaking or promise thereunder."

Again, based upon the above-referenced clear language of the Forall Management Agreement, Claimants' allegations of novation, release or waiver by Forall must also be rejected.  Again, it is impossible to conclude that by executing the Forall Management Agreement pursuant to which Forall and Sarah agreed that there was no waiver of Forall's rights, Forall nevertheless waived such rights.  Sarah's claims must again be denied.

## NON-DISCLOSURE BY FORALL OF A PRIOR LAS VEGAS STORE

In its Demand for Arbitration, Sarah alleged that during the initial negotiations, Forall withheld and concealed from Sarah that it had a retail store in Las Vegas prior to 2011 and that such store did not operate profitably.  However, in its pre-arbitration brief at pages 10-11, Claimants argued that Forall misled Sarah and induced Sarah to enter into the License Agreement based upon Forall's misinformation in that "Forall made exaggerated proclamations about the success of the Pal Zileri brand and the operation of a prior store in the Las Vegas area."  Thus, Claimants' allegations in the Demand for Arbitration of non-disclosure of the prior Las Vegas Store are directly contradicted by Claimants' own pre-arbitration brief.  It cannot be possible that Forall concealed the prior existence of a Pal Zileri store in Las Vegas if Forall "made exaggerated proclamations about...the operation of a prior store in the Las Vegas area."

Moreover, at the hearing, Sarah provided no proof to support any non-disclosure claim and its post-hearing brief did not list any such alleged non-disclosure as an issue to be decided at the arbitration.  (See pp. 2-3 of Claimants' Post Hearing Brief).  As

AAA Case No. 01-18-0000-6180

such, this claim was apparently abandoned by Claimants.

## FALSE FINANCIAL ESTIMATES BY FORALL

In its pre-arbitration brief, Claimants alleged that "Forall inflated estimates of store performance." However, no credible evidence was provided at the hearing to support this allegation. Again, Claimants did not claim in their post hearing brief that the issue of false estimates by Forall was an issue to be decided in this arbitration.

Moreover, Section 18.1 of the License Agreement stated as follows:

"18.1 Operator acknowledges that it has entered into this Agreement after making an independent investigation of Forall's operations and not in reliance upon or as a result of a representation as to gross revenues, volume, potential earnings or profits which Operator in particular might be expected to realize, nor has anyone made any other representation which is not expressly set forth herein, on which Operator or its shareholders, officers or directors relied to induce Operator to accept and execute this Agreement. Forall does not make any representation, warranty or guaranty, express or implied, as to the potential success of the business venture contemplated hereby."

In light of Claimants' failure of proof and the explicit language of Section 18.1 of the License Agreement, Claimants' allegations of inducement based upon false financial estimates by Forall must also be rejected.

## ESTABLISHMENT OF A WEBSITE

Claimants alleged that "Pursuant to page 1 of the Internet Agreement Forall agreed to establish a website" but Forall failed to do so. (See Claimants' pre-arbitration brief pp. 6-7). In fact, on April 2, 2012, Sarah and Forall signed The Internet License Agreement. The Internet License Agreement did not require Forall to build a website, and, in fact, the testimony established that it was Sarah's obligation - not Forall's - to build a website. (See transcript, p. 174 of October 26, 2020 testimony) Sarah failed to do so.

AAA Case No. 01-18-0000-6180

In any event, Sarah also subsequently withdrew its allegations of breach of the Internet License Agreement by Forall.  (See transcript, p. 7 of October 27, 2020 hearing).

## OPERATIONAL DEFAULTS

1.  <u>Old Merchandise</u>.  Sarah claimed that Forall delivered prior seasons' men's fashions, which were not the current line, and this hurt Sarah's sales and promotions. At the hearing, Sarah presented absolutely no evidence to support this claim.

2.  <u>Late deliveries</u>.  Sarah claimed that much of the stock of men's fashions delivered from Forall to Sarah was late and this also hurt Sarah's ability to make sales. Again, while there was some debate about when merchandise should be delivered for the seasons in Las Vegas, there was absolutely no showing of late deliveries.  No documentary evidence was presented establishing delivery dates and that such delivery dates were not met.

## ADVERTISING CONTRIBUTION

Sarah claimed that Forall repeatedly failed to meet its obligation to pay 3% of sales for advertising expense.  In fact, the evidence established to the contrary. Moreover, to help Sarah, Forall increased the advertising budget by $60,000.00.  Again, at the hearing there was absolutely no credible proof to support this claim by Sarah.

## BUILD-OUT CONTRIBUTION

Sarah claimed that despite Forall crediting Sarah $512,639, Forall still owed Sarah $38,000 for Forall's 50% share of the build out expense for the Las Vegas Store. However, documentary evidence established that this payment was actually made by Forall to Italnord, which took over the Las Vegas Store before the due date of the

AAA Case No. 01-18-0000-6180

$38,000.

In addition to the Italnord Management Agreement, on or about September 10, 2013, Sarah and Italnord entered into an Asset Purchase Agreement pursuant to which Italnord paid Sarah $140,000 for the furniture, fixtures, equipment and other tangible personal property used by the Las Vegas Store.  Section 1.4(b) of this Asset Purchase Agreement specifically stated that Italnord was to pay this $38,000, which was due from Forall to Sarah.  Sarah claimed that it never received the $38,000 from Italnord, but it offered no explanation as to why it did not pursue Italnord to collect this sum.  In any event, it is clear that the payment was made by Forall.

## **FORALL'S LATE PAYMENT OF RENT**

Sarah claimed in its Demand for Arbitration that "Forall was chronically late in making rent payments" to Simon after execution of the Forall Management Agreement (see Demand Paragraph 11) and that "in direct consequence of such failure [to timely pay rent] by Forall, the landlord commenced and prosecuted an eviction against Sarah LLC and Forall, and effectively terminated the Forum lease."  (See Demand p. 8 Paragraph I).  However, there was also absolutely no evidence to support the claim that the loss of the Lease was due to Forall's late payment of rent.  The testimony established that Forall never received any late notice for non-payment of rent and the eviction papers from Simon did not state that non-payment of rent as a reason for the eviction.  To the contrary, the Notice To Surrender sent by counsel for Simon to Forall stated that the Lease was terminated because Simon and Sarah had executed an Agreement Canceling Lease.  Nothing was said about any late payment of rent by Forall.  As such, these claims by Sarah must also be rejected.

AAA Case No. 01-18-0000-6180

In sum, Sarah did not prove that Forall breached the License Agreement or the Forall Management Agreement.  There is no basis for granting Sarah a declaratory judgment or any of the other relief it seeks.  All of Claimants' claims are, therefore, denied.

## FORALL'S COUNTERCLAIMS

By way of counterclaims, Forall claimed significant damages as a result of Sarah's breach of the License Agreement, the Collateral Assignment of Lease, the Forall Consent Agreement and the Forall Management Agreement.  The specific breaches are as follows:

## MINIMUM PURCHASE REQUIREMENT

Section 4.2 of the License Agreement required Sarah to make purchases of a minimum of $900,000.00 a year. The evidence established that Sarah did make the required purchases for the first 2 years before it turned over management of the store to Italnord pursuant to the Italnord Management Agreement.  Forall claims that it is entitled to an award against Sarah for the loss of profits for the 5 years, from August 2016 when it was evicted from the Las Vegas Store, until the termination of the License Agreement in 2021.  Sarah's defenses in this regard are as follows:

(a) Sarah's most significant defense to the minimum purchase requirement claim is that it claims that in September 2012 the two Dr. Hamads met in Venice with Forall's senior officials to discuss the problems with the Las Vegas Store.  Both Dr. Hamads testified that at this meeting with the senior officials of Forall, there was agreement by Forall to waive the $900,000.00 annual minimum requirement and to replace this with a

requirement of minimum sales based upon the prior year's sales.  The former chief executive officer of Forall who was at the meeting testified that there was discussion about the minimum purchase requirement, but there was never agreement by Forall to waive it.

Sarah presented no writings at all to support this defense.  There were no memos, e-mails, letters, internal documents, texts, or any memorialization of an agreement to such a significant change.  Any oral agreement would directly fly in the face of Sections 17.5 and 17.7 of the License Agreement, which required a writing for any amendment.

Additionally, it makes absolutely no sense to believe that such a significant change was made at the undocumented meeting.  After the undocumented meeting, there were additional agreements between the parties, such as the Forall Consent Agreement and the Forall Management Agreement. These agreements were negotiated carefully and reduced to writings drafted by counsel for both sides.  It is not credible to believe that a change so significant as the elimination or modification of the minimum annual purchase requirement was not written into any agreement even though other agreements were negotiated, drafted by counsel, and executed by the parties later on. It is also not credible to believe that when drafting and executing subsequent agreements, neither Sarah nor Forall asked to have any change made to the minimum purchase requirement.

Sarah also argues that Forall's conduct in connection with the Forall Consent Agreement and again in connection with the Forall Management Agreement constituted Forall's waiver of the minimum purchase requirement.  As noted above, such arguments

AAA Case No. 01-18-0000-6180

by Claimants must be rejected as contrary to the credible testimony and the documentary evidence executed by both parties with the advice and assistance of counsel.

Sarah also argues that Forall's claims should only be for 4 ½, not 5 years. However, given the testimony regarding when purchases should have been made for the two annual seasons, it is clear that the claim for 5 years of lost profits should be sustained.

Sarah attacked Forall's damages expert for failing to provide a careful review and audit of Forall's financial documents to establish the amount of actual lost profits. However, Sarah's own expert acknowledged that an approximately 50% profit margin in connection with sales of high end men's fashions is an appropriate profit margin. Forall's accountants calculated the profit margin at 49% of lost sales and made deductions for Forall's costs of production and non-payment of advertising expense. Forall's expert also appropriately calculated interest at the New York statutory rate of 9%.  In all, the credible evidence supports the conclusion that Forall is entitled to an award on its counterclaims regarding the minimum purchase requirement in the amount of $2,177,100 plus interest in the amount of $292,236.00 as of February 12, 2020.

Claimants argue that Forall breached its duty to mitigate damages in two ways. First, Claimants assert that while Forall was operating the Las Vegas Store pursuant to the terms of the Forall Management Agreement, Simon proposed to both Sarah and Forall that if the favorable space in the central area of the Forum Mall could be surrendered, the Las Vegas Store could be relocated to a lower level more remote location in the Forum Mall.  Additionally, the old very high fixed rent could be replaced

by a more reasonable rent based upon a percentage of sales. However, Forall rejected such a move because its half million-dollar investment in the build out of the existing store would mostly be lost, additional investment would be required to move and build out another location and there was little assurance that a store in a less desirable location would succeed, even with reduced rent.  Such conclusion by Forall seems a reasonable exercise of Forall's business judgment.

Sarah also argues that Forall failed to mitigate damages because it did not open another Pal Zileri store in the United States after 2016.  However, the record indicates that Claimants themselves considered and rejected opening a Beverly Hills store and the License Agreement gave Claimants the option to open Pal Zileri stores in New York and Chicago in 2012 and 2013 but Claimants never did so.  This supports the conclusion that Forall was not required to open another store to mitigate Sarah's damages herein.

It is significant to note that Sarah could have mitigated damages themselves. The credible evidence establishes that in February 2016, Forall requested additional time to notify Sarah if it would extend the Forall Management Agreement beyond September 1, 2016.  Claimants never responded.  Additionally, Forall's counsel reached out to Sarah's counsel with the same request, but again there was no response.  It ill behooves Sarah to now complain about damages commencing in 2016 when it ignored Forall's requests, which could have led to an extension of the Forall Management Agreement, thereby mitigating damages against Claimants.

Finally, Sarah argues that Forall is not entitled to damages from Sarah because Forall was not a profitable company.  However, Sarah provides no legal support for the

AAA Case No. 01-18-0000-6180

proposition that an unprofitable company can never recover damages from another company, which has breached a contract with the unprofitable company.  This would be a bizarre result because the very breach may have caused the unprofitability.  Sarah's argument might have some support if it established that Forall's lack of profitability was due to the fact that Forall's cost of production of the Pal Zileri products exceeded the selling prices of such products.  No such proof was provided by Sarah.

## PREMATURE EVICTION

Pursuant to the terms of the Collateral Assignment of Lease, Sarah granted Forall a security interest on the Lease for the Las Vegas Store.  Section 3(d) of the Collateral Assignment of Lease prohibited Sarah from transferring any interest in the Lease to any other person or entity without Forall's prior written consent.

In September 2013, Sarah and Forall also executed the Forall Consent Agreement.  Paragraph 4 of the Forall Consent Agreement stated:

"4. The Company [Sarah] shall not transfer the Lease Agreement without Forall's prior written consent and agreement."

Similarly, Section 5.12 of the Forall Management Agreement stated as follows:

"5.12. The Company [Sarah] shall not transfer or surrender the Lease without Forall's prior written consent and agreement."

As noted above, in 2013, when Sarah unilaterally negotiated with Simon to surrender the Lease back to Simon, Forall vigorously objected to any such attempt. Yet without Forall's knowledge or consent, in mid-2016, Sarah again unilaterally negotiated with and then surrendered the Lease back to Simon.

Additionally, the Forall Management Agreement explicitly gave Forall the right to manage the Las Vegas store until September 1, 2016.  Nevertheless, without prior

notice to Forall, Sarah surrendered the Lease as of July 31, 2016, a month earlier.

Sarah joined with Simon in an eviction proceeding to evict Forall from the premises.

The precipitous action agreed to by Sarah led to the payment of severance payments to

employees and to additional costs in closing down the Las Vegas Store in a precipitous

manner.

On an emergency basis, Forall had to pack the merchandise in the Las Vegas

Store and have it shipped to a New Jersey warehouse.  Forall is entitled to $44,003.00

for out-of-pocket expenses for the premature closing of the Las Vegas Store by Sarah

rather than a systematic controlled reduction of inventory and move.  Forall also claims

a 10% loss of value of its inventory at the Las Vegas Store and for the expedited costs

of packing up the inventory and shipping it to the New Jersey warehouse.  Since this

was brought about solely by the precipitous action of Sarah, the 10% or $77,381.00 is

also appropriate as damages.  Both the $44,003 and the $77,381 of damages were

supported by documentary evidence submitted at the hearing by Forall.

In all likelihood, Forall was also damaged in that the name of Pal Zileri became

associated with an immediate eviction from a high-end mall in Las Vegas.  However, no

claim for damages has been made by Forall in this regard.

## COSTS AND ATTORNEYS' FEES

There is no doubt that Forall incurred significant attorneys' fees to defend against

the claims of Sarah and to seek an award for damages as a result of Sarah's breaches

of the License Agreement, the Collateral Assignment of Lease, the Forall Consent

Agreement and the Forall Management Agreement.  The amount of attorneys' fees

incurred by Forall was exacerbated by the fact that, as noted above, Claimants asserted

AAA Case No. 01-18-0000-6180

numerous claims which were totally unsupported by any evidence provided at the hearing or were later withdrawn or abandoned by Claimants.

In all, the essence of this arbitration is that over the course of many years, Claimants, assisted by counsel, signed numerous agreements confirming that they remained liable for the minimum sales requirement and other obligations.  They cannot void the legal effect of such agreements by simply claiming an undocumented oral agreement to the contrary.  These same agreements also clearly stated that Claimants could not surrender the Lease without Forall's consent.  Yet they knowingly did so. Claimants are, therefore, responsible for the legal consequences of these actions.

I find that Forall is the prevailing party in this matter.  Pursuant to Section 5 of the License Agreement, Section 5 of the Collateral Assignment of Lease and Article VII of the Forall Management Agreement, Forall is entitled to its costs and reasonable attorneys' fees.  I find that the amount of work by Forall's counsel, Forall's counsel's rates and the high quality caliber of work by Forall's counsel lead to the conclusion that Forall's request for an award of $233,767.00 in counsel fees is fair and appropriate. Significantly, Claimants interposed no challenge or objection to this request.

Pursuant to American Arbitration Association Commercial Rules 28 and 54, Forall is also entitled to recovery of court reporter fees in the amount of $7,633.25, and expert fees in the amount of $18,500.00.

## AWARD

Based upon the above, I FIND and AWARD, as follows:

1.  Claimants Sarah LLC, Hala Subh, Suhad Albasha, Bachar Hamad and Amar Hamad are jointly and severally liable to and shall pay to Forall USA, Inc. the sum of

AAA Case No. 01-18-0000-6180

$2,177,100.00 (Two Million One Hundred Seventy-Seven Thousand, One Hundred Dollars and 00/100) for lost profits, plus interest in the amount of $292,236.00 (Two Hundred Ninety-Two Thousand Two Hundred Thirty-Six Dollars and 00/100) through February 12, 2020, plus interest at the rate of 9% per annum on the principal amount of $1,730,880.00 (excluding amounts due for 2021 and the second half of 2020) from February 21, 2020 to the date of this Award, plus interest at the rate of 9% per annum on the principal amount of $2,177,100.00 from the date of this Award to the date of payment.

2.  Claimants Sarah LLC, Hala Subh, Suhad Albasha, Bachar Hamad and Amar Hamad are also jointly and severally liable to and shall pay to Forall the sum of $121,384.00 (One Hundred Twenty-One Thousand Three Hundred Eighty-Four Dollars and 00/100) plus interest at the rate of 9% per annum from January 1, 2017 to date of payment for devalued inventory and store closing expenses.

3.  Claimants Sarah LLC, Hala Subh, Suhad Albasha, Bachar Hamad and Amar Hamad are jointly and severally liable to and shall pay to Forall the sums of $233,767.00 (Two Hundred Thirty-Three Thousand Seven Hundred Sixty-Seven Dollars and 00/100) for reasonable attorneys' fees plus $7,633.25 (Seven Thousand Six Hundred Thirty-Three Dollars and 25/100) for court reporter transcript fees and $18,500.00 (Eighteen Thousand Five Hundred Dollars and 00/100) for expert fees.

4.  In summary, Respondent is awarded $2,850,620.25 (Two Million Eight Hundred Fifty Thousand Six Hundred Twenty Dollars and 25/100) plus interest as set forth above.

5.  All of Claimants' claims are denied.

AAA Case No. 01-18-0000-6180

6.  Respondent's counterclaims I through IV are granted to the extent set forth above.

7.  The administrative fees of the American Arbitration Association totaling $20,450.00 and the compensation of the Arbitrator totaling $74,218.79 shall be borne by Claimants.  Therefore, Claimants Sarah LLC, Hala Subh, Suhad Albasha, Bachar Hamad and Amar Hamad, jointly and severally, shall reimburse Respondent the sum of $51,809.39, representing that portion of said fees and compensation in excess of the apportioned costs previously incurred and paid by Forall USA, Inc.

8.  The above sums are to be paid on or before 30 days from the date of this Award.

9.  This Award is in full settlement of all claims and counterclaims submitted to this Arbitration. All claims and counterclaims not expressly granted herein are, hereby, denied.

Jun 25, 2021
_____
Date

_____
Eugene I. Farber, Arbitrator

I, Eugene I. Farber, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Award.

Jun 25, 2021
_____
Date

_____
Eugene I. Farber, Arbitrator

AAA Case No. 01-18-0000-6180

STATE OF NEW YORK          )
                                              ss:
COUNTY OF WESTCHESTER  )

On this 25th day of January, 2021, before me personally came and appeared Eugene I. Farber, to me known and know to me to be the individual described in and who executed the foregoing instrument and he acknowledged to me that he executed the same.

*JoAnn M. Cioffari*

Notary Public


JOANN M. CIOFFARI
Notary Public, State of New York
No. 01CI0130096
Qualified in Westchester County
Commission Expires 12/19/20 21


AAA Case No. 01-18-0000-6180