# License and Retail Operator Agreement

Between

## FORALL U.S.A, INC.
## AND
## SARAH, LLC

Prepared by: James J. Veneruso, Esq.
Dated: March_____, 2011

FORALL000168

## TABLE OF CONTENTS

| | |
|---|---|
| ARTICLE 1 | Definitions |
| ARTICLE 2 | Grant and Acceptance of the Right, License and Privilege and Term |
| ARTICLE 3 | Marks |
| ARTICLE 4 | Ordering apparel, licensed Products and Discounts |
| ARTICLE 5 | Remodeling Costs of New Store |
| ARTICLE 6 | Marketing and Sales Methods |
| ARTICLE 7 | Personnel Standards and Training |
| ARTICLE 8 | Advertising and Promotion |
| ARTICLE 9 | Insurance and Records |
| ARTICLE 10 | Additional Duties and Covenants of Operator |
| ARTICLE 11 | Default and Termination |
| ARTICLE 12 | Transferability of Interests |
| ARTICLE 13 | Independent Contractor |
| ARTICLE 14 | Option Regarding the Cities of New York and Chicago |
| ARTICLE 15 | Right of First Refusal Areas other than Cities of New York and Chicago |
| ARTICLE 16 | Forall's Right to Operate Stores |
| ARTICLE 17 | General Provisions |
| ARTICLE 18 | Caveat |

FORALL000169

# LICENSE AND RETAIL OPERATOR AGREEMENT
## BETWEEN
## FORALL U.S.A., INC.
## AND
## SARAH, LLC

This Franchise Agreement (the "Agreement") is made as of the ___ day of  March 2011, by and between Forall U.S.A., Inc., a New York corporation ("Forall"), with its principal office located  Seven Sutton Place, Brewster, New York 10509, and Sarah, LLC, a Limited Liability Company formed in the State of Illinois, (herein "Operator") with a principal office located at 1717 Midwest Club Parkway, Oakbrook, IL. 60523.

## W I T N E S S E T H:

1.  Forall has developed a distinctive system (the "System") for the establishment and operation of a retail operation for the sale and presentation of "Pal Zileri" brand clothing and other licensed products (as defined herein, the "Licensed Products") consistent with the uniform worldwide image of its tradename by using distinctive facilities, décor, operating procedures, merchandising strategies and advertising programs;

2.  Pursuant to a license from Forall Confezioni S.P.A. ("Parent"), Forall has the sole right to use and to grant others the right to use the trademarks PAL ZILERI (represented by the  PAL ZILERI, PAL ZILERI CONCEPT, PAL ZILERI SARTORIALE, PAL ZILERI CERIMONIA collections) and LAB.Pal Zileri (collectively, the "Marks") in connection with retail operations in the United States and to develop, use and control the Marks for the benefit and use of itself and its licensees and to represent the System's high standards of quality and service;

3.  Operator acknowledges the distinctiveness and value of the System, and Licensed Products and the Marks and desires to obtain the right, license and privilege and Forall to employ the System to establish and operate a retail operation at The Forum Shops at Caesars Palace, _____ , 3500 Las Vegas Blvd. South, Las Vegas, NV 89109 (the "Store"), to use the Marks at the Store, and to purchase the Licensed Products from the authorized licensees of Parent specified herein, all under the terms and conditions set forth in this Agreement.

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Forall Operator hereby agree as follows:

FORALL000170

## ARTICLE 1.  DEFINITIONS

1.1   The term "Apparel" shall mean clothing and accessories produced by Parent and affixed with a label bearing one or more of the Marks.

1.2   The term "Licensed Products" shall mean Apparel, and any other clothing and accessories and any other products produced by or for an authorized licensee of Parent as designated by Forall to the Operator and affixed with one or more of the Marks.

1.3   The term "Member"" refers individually to Hala Subh and Suhad Albasha who each own a fifty (50%) interest in Operator.

1.4   "Territory" shall mean within the City of Las Vegas, Nevada,or any other geographic area which pursuant to Article 14 herein. Multi-brand dept. store and specialty store are excluded.

1.5   Guarantors refers collectively to Hala Subh, Suhad Albasha, Dr. Bashar Damad and Ammar Hammad.

## ARTICLE 2.  GRANT AND ACCEPTANCE OF THE RIGHT, LICENSE
##              AND PRIVILEGE AND TERM

2.1   Forall hereby grants to Operator, during the term of this Agreement, the exclusive right, license and privilege to employ the System, to establish and obtain Apparel and other Licensed Products for display and sale at the Store within the Territory, all in accordance with this Agreement.

2.2   The right, license and privilege granted in Section 2.1 excludes any right, license or privilege to sell Licensed Products for resale, to sell in the Store any clothing, accessories or other products other than the Licensed Products, without the prior written approval of Parent or to use the Marks in association with any logos, trade names, trademarks or service marks other than the Marks, to use the Marks in association with any other than Licensed Products or any services other than sales services of the Licensed Products in the Store.

2.3   Operator accepts the right, license and privilege set forth in Section 2.1 and agrees to adhere to the exclusions set forth in Section 2.2.  Operator undertakes the obligation to operate the Store in conformity with the System and in accordance with this Agreement for the duration of the term of this Agreement.

2.4   The rights granted by Forall to Operator pursuant to this Agreement are not transferable by Operator, in whole or in part, to any site other than the Store or to any person, firm or entity other than Operator.  Operator is not entitled to grant any sublicenses, assignments or partial assignments pursuant to this Agreement.

2.5.   As further consideration and security for the rights granted hereunder, Operator agrees as follows:

FORALL000171

A. For the First season A/W 2011-2012 Operator shall pay to Forall, at execution of this Agreement, $398,238.00, by bank check or wire transfer, representing the total discounted cost of Licensed Products ordered for the Store.

B. For the Second Season, Spring/Summer 2012 and in no event later than August 30, 2011 Operator shall pay to Forall a security deposit in the amount of $200,000.00.  The security deposit shall be held in escrow in an interest bearing account for the term of this Agreement.  In the event Operator defaults in the payment of any order for the Store, Forall in its sole and absolute discretion shall have the right to use the security deposit to pay the amounts past due.

C. For orders placed from August 2011 and thereafter, Operator shall either (i). pay for the order in advance ; or (ii). Open a 90 day Letter of Credit.

D. If Operator chooses to provide a letter of credit in accordance with Section C above, Forall does not have to accept any orders if at any time inventory purchases for the Store exceeds, or in the reasonable estimation of Forall will exceed, the letter of credit amount and Forall shall promptly notify Operator should this occur. Forall  shall not be obligated to accept additional orders or ship orders already received unless and until Operator increases the amount of the letter of credit to an amount sufficient to collateralize inventory purchases.  Forall shall have no liability whatsoever to Operator or any third party due to or arising out of Foralls refusal to accept additional orders or ship orders already received in the event that the letter of credit does not comply with the terms herein.

2.6    The parties acknowledge that Operator has not paid any fee to Forall directly or indirectly in order to obtain the license or other rights granted herein.  Operator is obligated to pay for the licensed Products it purchases from Forall.

2.7    The term of this Agreement is ten (10) years from the date of this Agreement, unless sooner terminated in accordance with this Agreement.

## ARTICLE 3. MARKS

3.1    Operator shall affix the Marks inside and outside the Store in accordance with the specifications approved by Forall.

3.2    Operator expressly acknowledges and agrees that the Marks and the goodwill attached thereto are valuable property owned solely by Forall its licensor and all past, present and future goodwill associated with the Marks, including any directly or exclusively to the benefit of Forall and its licensor.  Operator expressly covenants the Operator shall not at any time directly or indirectly contest or aid in contesting the validity of the Marks or Forall's and its licensor's ownership of the Marks.

FORALL000172

3.3   Operator shall not use or allow others to use any of the Marks as part of the corporate name or other business name of Operator or any entity owned or controlled by it.  Operator understands and agrees that its License to use the Marks is non-exclusive and Forall has the right to use the Marks and to grant other licensees the right to use the Marks on any terms and conditions other than grants expressly excluded by this Agreement.

3.4   In the event any person, or entity uses without authority or otherwise infringes the Marks or any apparent challenger to Operators use of any Mark, Forall shall control all litigation, and shall determine, in its sole discretion, whether or not any other action should be taken.  Operator agrees to notify promptly Forall of any such use or infringement of which it becomes aware or of any litigation involving the Marks instituted by any person, firm, corporation or governmental agency against Operator or of which Operator has knowledge.  If Forall, in its sole discretion, undertakes the defense or prosecution of any litigation or administrative proceeding involving or affecting the Marks, Operator agrees to do such acts and things as may, in the opinion of counsel for Forall, be necessary to carry out such defense or prosecution, whether in the name of Forall, its licensor or Operator, as Forall or its licensor shall elect.

3.5   Forall agrees to indemnify and defend Sarah for all damages for which Sarah is held liable or any claim or proceeding referred to in Section 3.4 hereof provided Sarah's use of the Marks was authorized pursuant to and in compliance with this Agreement and for all costs reasonably incurred by Sarah in the defense of any such claim brought against Sarah or any such proceeding in which Sarah is named as a party, provided that Operator has timely notified Forall of such claim or proceeding, have given Forall sole control of the defense (including selection of attorneys to represent Sarah) and settlement of any such proceeding, and have otherwise complied with this Agreement.

3.6   In order to maintain uniformity, to preserve the integrity of the Marks and to enhance the reputation and goodwill associated with the Marks, Operator agrees:

3.6.1   To use the Marks only at the Store or in advertising and promotional material employed in connection with the sale of Licensed Products and operation of the Store; and

3.6.2   To operate the store in accordance with the System and as may be otherwise mutually agreed in writing between Forall and Operator.  Forall reserves the right to promulgate such additional reasonable standards and obligations concerning the use of the Marks or the products and services offered thereunder as Forall may,  deem necessary to preserve and protect the use, goodwill and integrity of the Marks.

3.7   Forall  its agents shall at all reasonable times have the right to enter and inspect the Store and observe the manner in which Operator is selling Apparel and rendering services.

FORALL000173

## ARTICLE 4. ORDERING APPAREL, LICENSED PRODUCTS AND DISCOUNTS

4.1   Subject to the terms of this Agreement, Operator shall purchase all Apparel from Forall pursuant to such terms and conditions as Forall may establish.

4.2   Operator shall place a minimum order of Four Hundred Thousand ($400,000.00) Dollars for Spring/Summer and Five Hundred Thousand ($500,000.00) Dollars for Fall/Winter for a total of Nine Hundred Thousand ($900,000.00) Dollars per calendar year.

4.3   Orders must be placed in Italy at Pal Zileris' Quinto Vicentino's show room.

4.4   Operator hereby undertakes to maintain at all times an adequate stock of Apparel within the limits of sound business management.  Within these limits, Operator shall have in stock all the categories of Apparel offered by Forall, including current collection of Apparel

4.5   Foralls pricing for Products purchased by Operator shall be based on a Pricing Schedule which is uniform worldwide.

4.6   Forall hereby grants: a twenty (20%) percent discount for the first year (first and second season) and a ten (10%) percent discount for the second year (third and fourth season).  This discount applies to any new store open during the term of this agreement.

## ARTICLE 5. REMODELING COSTS OF NEW STORE

5.1   <u>In addition to the discounts specified in Article 4</u>. Section 6 of this Agreement, Forall agrees to provide fifty (50%) percent of the remodeling costs for Operator's store opened during the term of this Agreement subject to the following terms and conditions:

      a.   The location of the store is to be mutually agreed upon by Forall and Operator.

      b.   The budget for the renovations shall be mutually agreed upon by Forall and the Operator.

      c.   Forall's contribution for remodeling costs shall be accomplished by providing a twenty (20%) percent discount on all orders until such discounts equal fifty (50%) percent of the costs of remodeling.

      d.   Operator shall be solely responsible for paying all of the costs of remodeling.  By way of example, if:

         i.   Total Renovation Cost of $800,000'

        ii.   Operator's total orders for the first two (2) years equals $2,000,000.

       iii.   20% of $2,000,000 = $400,000.

FORALL000174

e.  The twenty (20%) percent discount shall end upon reaching the fifty (50%) percent "renovation cost" obligation.

f.  Design of internal/external lay-out shall be obtained by the Parent, at its expense.

g.  All contracts for the renovations shall require the prior written approval of Forall.

h.  Upon request any and all records relating to the renovation shall be provided to Forall.


## ARTICLE 6.  MARKETING AND SALES METHODS

6.1   From time to time Forall will consult with Operator and provide suggestions regarding various marketing methods.

6.2   Operator shall not permit at, in or on the Store any advertising or merchandising of products other than Licensed Products, or services other than sales services of Licensed Products without the prior approval of an authorized officer of Forall.

6.3   Operator shall meet Forall's requirements regarding merchandising and image. Window displays shall conform to Forall's requirements.  It is Forall's intention that the Store be maintained to the highest standards.

6.4   Sales may take place seasonally a/w, s/s twice a year. Sale Dates to be approved by Forall.

6.5   Store mark ups shall be between 2.3 to 3.0.  Any deviation requires Forall's prior written consent.

6.6   Operator shall not employ any manager not approved in advance by Forall.

6.7   Operator may sell unsold merchandise at the end of each season through an outlet store within the territory.


## ARTICLE 7.  PERSONNEL STANDARDS AND TRAINING

7.1   Operator shall be responsible for ensuring that sufficient trained staff are available at all times to provide service to commensurate with a discerning clientele.   During business hours, the shirts, trousers, jackets, suits, ties and other visible apparel of the staff shall consist exclusively of Forall Apparel.  The staff's clothing, appearance and advice shall always accord with the Forall image. Forall at its sole cost and expense will provide the following apparel to Operator which apparel shall be worn by Operator's employees during business hours: one (1) suit, one(1)  shirt, one (1) tie (once a season) while  one (1) pair of shoes (once a year).   Forall shall provide the foregoing for up to nine (9) employees per year. Operator shall be responsible for apparel and shoe costs incurred for more than nine (9) employees in any given year.

FORALL000175

7.2     Operator and Principal shall devote full time and effort to the supervision, management and operation of the Store; provided, however, that if Operator or Principal is involved with any other Forall retail operation pursuant to a separate Franchise Agreement, such party shall devote its time between this Store and other retail operations in such a manner to ensure that all such retail operations, including the Store, are operated in compliance with their respective Agreements, including this Agreement, and in a profitable manner.   Operator shall hire competent persons as employees and shall cause all of its employees to complete such training programs as Forall may from time to time reasonably require in order that Operator's employees may be fully trained and instructed on a continuing basis in the various aspects of the System.  The manager of the Store must be approved by Forall prior to being hired, which shall not be unreasonable withheld.

## ARTICLE 8.  ADVERTISING AND PROMOTION

8.1     Forall shall furnish Operator with approved illustrations, photographs, layout and copy for use in such advertising.  Operator shall obtain Forall's specific prior written approval before displaying, placing or otherwise using any advertisement or material bearing the Marks or advertising or promoting the Licensed Products or the Store;

      8.1.1   Advertising material used in the Store's premises and windows shall be current approved material.  All Licensed Product advertisements must comply with the approved Forall worldwide advertising concept.   In particular, the latest approved layout must be employed; any modification of the approved layout must be approved in writing by Forall; and

      8.1.2   Operator is not permitted to advertise both Apparel and other Licensed Products in the same advertisement without Forall's prior written approval. Illustrations and photographs furnished by Forall may be employed in advertisements only in conjunction with the Marks.  In no event shall Operator use the illustrations, photographs, designs or any other materials provided by Forall in connection with the promotion or advertisement of any goods or services other than a Licensed Product or the Store.

8.3 In no event may Operator display, publish or distribute advertising or promotional materials that are not approved by Forall.

8.4  Advertising: During the first (1st ) year of this Agreement Operator agrees to spend Twenty- Seven Thousand ($27,000.00) Dollars (3% of $900,000.00) for advertising and promotion.  Forall, will also match up to Twenty-Seven Thousand ($27,000.00) for advertising and promotion for the Store.  Thereafter, Operator agrees to spend three (3%) percent of Gross Purchases per season for advertising and promotion and Forall shall match such amount.  If for any reason the total amount of purchases in any year falls below $900,000.00 per year, in addition to all other rights under this agreement, Forall shall have the absolute right to either not contribute to advertising and promotion costs or to partially contribute to such costs.

FORALL000176

**ARTICLE 9.  INSURANCE AND RECORDS**

9.1   During the term hereof, Operator shall obtain and maintain insurance coverage with insurance carriers acceptable to Forall.   The coverage shall commence when the site for the Store is secured by Operator, shall comply with the requirements of Operator's lease, if any, for the Store and shall include coverage for public liability, including products liability, in the amount of at least Five Million and 00/100 ($5,000,000.00) Dollars and of at least One Million and 00/100 ($1,000,000) Dollars for the contents of the Store.  Operator also shall carry fire and extended coverage insurance with endorsements of vandalism and malicious mischief, covering the building, structures, improvements and the contents thereof in and at the Store, on a full replacement cost basis, insuring against all risks of direct physical loss except for such unusual perils as nuclear attack, earth movement and war, and business interruption insurance for actual losses sustained covering the rental of the facility, previous profit margins, maintenance of competent personnel and other fixed expenses.  Operator also shall carry such workers' compensation insurance and such other insurance as may be required by applicable law.   In connection with any construction, refurbishment or remodeling of the Store, Operator shall maintain builders' insurance and performance and completion bonds in forms and amounts, and written by a carrier or carriers, acceptable to Forall.

9.2   Forall shall be named as additional insured on all of the insurance policies described in Section 9.1 above to the extent of each of their interests and shall be provided with certificates of insurance evidencing such coverage.  All public liability and property damage policies shall contain a provision that each of Forall , although named as an insured, shall nevertheless be entitled to recover under such policies on any loss occasioned to it, its affiliates, agents and employees by reason of the negligence of Operator, its principals, contractors, agents and employees.  All policies shall provide Forall   with at least thirty (30) days' notice of cancellation or termination of coverage.  Forall reserves the right to specify reasonable changes in the types and amounts of insurance coverage required by Section 9.1 above and this Section 9.2.  Should Operator fail or refuse to procure the required insurance coverage form an insurance carrier acceptable to Forall or the maintain it throughout the term of this Agreement, including any renewal term, Forall may, at its sole discretion, obtain such coverage for Operator, in which event Operator agrees to pay the required premiums or to reimburse Forall therefor immediately.  Failure to maintain the insurance coverage required herein or to promptly reimburse Forall for any premiums paid by Forall on Operator's behalf shall constitute a breach of this Agreement.

9.5   To enable Operator and Forall to best ascertain Operator's costs and to maintain an economical method of operation, Operator agrees to keep and preserve, for at least six (6) years from the date of their preparation, full, complete and accurate

books and accounts in accordance with generally accepted accounting principles and in the form and manner as may be prescribed by Forall.

FORALL000177

9.6     Operator shall submit an unaudited income statement to Forall within forty-five (45) days following each calendar quarter during the term, which shall set forth quarterly cash flow, total gross receipts and itemized expenses.  Additionally, Operator shall, at its expense, submit to Forall within ninety (90) days of the end of each calendar year during the term of this Agreement, a full set of Financial statements for such calendar year including a balance sheet as of the last date of such year, an income statement and a statement of case flow which have been audited by a certified public accountant acceptable to Forall certified as true by Operator.

9.7     Operator shall submit to Forall monthly sales reports and such other periodic reports, copies of purchase orders, forms, information and records as may be requested from time to time by Forall.

9.8     Operator shall keep true, complete and correct records of each transaction of any activity affecting sales, revenues or purchase, including advertising.  Forall's representatives shall have the right to inspect and copy at all reasonable times and with reasonable notice, Operator's books, records, inventory and cash control devices or systems.  Further, within sixty (60) days of Forall's written request, Operator shall, at Operator's expense, supply Forall with a full, certified audit of Operator's affairs made by an independent certified public accountant acceptable to Forall in accordance with generally accepted accounting principles. Failure to follow any accounting procedure required herein shall constitute a breach of this Agreement.

9.9     Operator acknowledges that nothing contained herein constitutes an agreement of Forall, Parent, any other purveyor of licensed Products or any other party to extend credit to or otherwise finance Operator.  Further, Operator acknowledges that its failure to pay all amounts when due shall constitute grounds for termination of this Agreement, as provided in Section 12.2 hereof.

9.10    Operator shall permit Forall, at Forall's expense, to install and operate on-line communications equipment in the Store which is compatible with Operator's point-of-sale equipment in order to permit Forall to monitor and track sales and purchases of Apparel on a daily basis.


## ARTICLE 10.  ADDITIONAL DUTIES AND COVENANTS OF OPERATOR

10.1    Operator shall not at any time, without Forall's prior written consent, copy, duplicate, record or otherwise reproduce Information which Forall has designated as Confidential Information, in whole or in part, nor otherwise make the same available to any unauthorized person.  The parties agree that Forall's pricing methods, mark down and margin policies all constitute Confidential Information.

10.2    Operator acknowledges and agrees that Operator acquires no interest in Confidential Information other than the right to utilize it in the development and operation of the Store during the term, and the use or duplication of Confidential Information by any unauthorized person or firm or in any other business would

FORALL000178

constitute an unfair method of completion and a violation of this Agreement. Operator acknowledges and agrees that Confidential Information is a trade secret of Forall that Operator, including Principal and all of Operator's employees, directors, officers, agents and shareholders:

10.2.1 Shall not use Confidential Information in any other business or capacity;

10.2.2 Shall at all times maintain the absolute confidentiality of Confidential Information;

10.2.3 Shall adopt and implement all reasonable procedures prescribed from time to time by Forall to prevent unauthorized use or disclosure of Confidential Information, including restrictions on disclosure thereof to employees of the business and the requirement of written nondisclosure and non-competition agreements with Operator's officers, directors, shareholders, agents and employees who may have access to Confidential Information.

10.3 Operator acknowledges that the Marks are associated with high quality, prestige products and that marketing any of the Licensed Products in the Store at prices substantially below prices Operator normally charges for the licensed Products could substantially diminish the value and prestige of the Marks.   Operator therefore agrees not to hold a clearance sale, going-out-of-business sale, store-wide reduction sale, liquidation sale or other sale outside the ordinary course of business without obtaining the prior written approval of Forall.

## ARTICLE 11  DEFAULT AND TERMINATION

11.1 Forall may, in its sole discretion, elect to either (I) terminate this Agreement or (ii) manage the operation of this Store for the account of Forall pursuant to the provisions of this Agreement, effective immediately upon delivery of notice of termination to Operator, in either case (a) if Forall notifies Operator  of an event of default and Operator fails to cure any such default susceptible to being cured within thirty (30) days after written notice of default is delivered to Operator or (b) if Forall notifies Operator of an event of default and such default is not susceptible to being cured.  An event of default shall be deemed to occur if Operator or an officer, director, shareholder or employee of Operator or Principal:

11.1.1 Fails to develop and equip the Store as provided herein;

11.1.2 Has made any material misrepresentation or omission in applying for the business governed by this Agreement or in any budget and business plan previously provided to Forall by Operator;

11.1.3 Is convicted of or pleads no contest to a felony or other crime or offense that is likely to adversely affect the reputation of Forall, the Apparel, the System, the Marks or the Store;

FORALL000179

11.1.4  Makes any unauthorized use, copy or disclosure of the Confidential Information;

11.1.5  Abandons or fails to operate, or refuses actively to operate, the Store for 15 business days in any twelve-month period, unless the Store has been closed for a purpose approved by Forall, or fails to relocate the Store to a premise approved by Forall within thirty (30) days following expiration or termination of the lease for the premises of the Store;

11.1.6  Becomes insolvent, is or will be unable to pay its obligations as they mature by reason of its inability to pay its debts as they mature or makes an assignment for the benefit of creditors or an admission of its inability to pay its obligations as they become due;

11.1.7  Fails to retain Principal as chief executive officer of Operator or Principal does not hold a majority interest in Operator;

11.1.8  Fails on three or more separate occasions within any twelve month period to submit when due reports or other information or supporting records;

11.1.9  Fails or refuses to make payments of any amounts due Forall or its licensees or affiliates for purchases from Forall's or its affiliates or any other amounts due to Forall or its affiliates, and Operator does not correct such failure or refusal within five (5) days after written notice of such failure is delivered to Operator;

11.1.10  Fails or refuses to comply with any provision of this Agreement, or a Specification. ; or

11.2   Operator agrees to pay to Forall or its licensee or affiliate within ten (10) days after the effective date of termination or expiration of this Agreement for any reason, or such later date that the amounts due are determined, such amounts owed for purchases of Licensed Products from Forall's licensee or affiliate, interest due on the foregoing and all other amounts owed to Forall  its licensees and affiliates which are then unpaid.

11.3   Operator agrees that after the termination or expiration of this Agreement for any reason, Operator and its officers, directors, shareholders, and Principal shall:

11.3.1  Not directly or indirectly at any time or in any manner advertise, promote or represent in similar fashion Operator or any business or it as a current or former Forall retail operation, business or franchise, or as a franchisee, licensee or dealer of or as otherwise associated with Forall, or use Marks, any colorable imitation thereof or other indicia of a Forall retail operation, in any manner or for any purpose (except as is necessary to comply with law or to identify simply or concisely on occupational history), or utilize for any purpose any logo, trade name, trademark, service mark or other commercial symbol that is confusingly similar to a Mark or suggests or

indicates a connection or association with Parent, Forall, its distributees or licensees;

11.3.2 Cease to use and promptly return to Forall all catalogs, advertising materials, forms, invoices and other materials containing any Marks or otherwise identifying or relating to Forall retail operation (including all Confidential Information, but excluding signs and sign faces which Operator shall retain, but not use, or destroy) and allow Forall, without liability, to remove all such items from the Store; and

11.3.3 Promptly take such action as may be required to cancel all fictitious or assumed name or equivalent registrations relating to its use of any Marks.

11.3.4 Continue to comply with the provisions of Article 10 of this Agreement regarding the non-disclosure of Confidential Information.

11.4  This Agreement and the obligations of the parties hereunder shall survive termination or expiration of the Agreement except to the extent expressly otherwise provided herein.

11.5  In the event of the death or incapacity of a Guarantor or any Member owning fifty (50%) percent or more of the capital stock of Operator, the heirs, beneficiaries, devisees or legal representatives of said Guarantor or Member shall, within one hundred twenty (120) days of such event:

11.5.1 Apply to Forall for the right to Operator to continue to operate the Store for the duration of the term of this Agreement and any renewals hereof, which right shall be granted in Forall's sole discretion; or

11.5.2 Sell, assign, transfer, or convey Operator's interest in compliance with the provisions of Article 11 hereto; provided, however, in the event a proper and timely application for the right to continue to operate has been made and rejected, the one hundred twenty (120) day period to sell, assign, transfer or convey shall be computed from the date of said rejection.

11.6  In the event of the death or incapacity of a Guarantor or any Member owning fifty (50%) percent or more of the capital stock of Operator where the provisions of Article 11.5 hereto have been fulfilled within the time provided, all rights licensed to Operator under this Agreement shall, at the option of Forall, terminate forthwith and automatically revert to Forall  Forall shall make payment to Operator or such Members of the fair market value of Operator's remaining rights under this Agreement upon the determination, by mutual agreement, as to the fair market value of such interest.  If the parties cannot agree on the fair market value within forty-five (45) days after such election, an independent appraiser shall be designated by Forall  the appraiser's determination shall be conclusive and binding on both parties.  The appraisal shall exclude any value for goodwill.

11.7  In order to prevent any interruption of the business which would cause harm and impair the value thereof, Operator authorizes Forall, in the event Principal is

FORALL000181

absent, incapacitated or departs from the business of the Operator by reason of illness, death or otherwise and Operator is not, therefore, in the sole reasonable judgment of Forall, able to operate the business hereunder, to operate said business for so long as Forall reasonably deems necessary and practical, and without waiver of any other rights or remedies Forall may have under this Agreement or otherwise.  All monies from the operation of the business during such period of operation by Forall shall be kept in a separate account and the expenses of the business, including reasonable compensation and expenses for Forall's representative, shall be charged to said account.  If, as herein provided, Forall temporarily operates for Operator the business licensed herein, Operator agrees to indemnify and hold harmless Forall  any representatives or Forall who may act hereunder, from any and all claims arising from the acts and omissions of Forall  its representatives, excepting the willfully unlawful or grossly negligent acts or omissions of Forall or such representative.  Forall is not required or obliged pursuant to this Section11.7 to operate the business in the event of the absence, disability, death or departure of Principal, and shall do so only in Forall's sole discretion.

11.8    If this Agreement is terminated, Forall has the right, but not the obligation, to buy from Operator and Operator shall have the obligation to sell all or part of the merchandise in stock at the time of termination at eighty (80%) percent of the wholesale price paid for current season merchandise, seventy (70%) percent for merchandise from the season before and forty (40%) percent for merchandise from two (2) seasons before or older.  Foralls cost for such merchandise shall be offset by any funds owed by Operator to Forall.

11.9    Upon the occurrence of an event of default as described in Sections 11.1.2, 11.1.4, 11.1.5, 11.1.6, 11.1.7 or 11.1.10 of this Agreement, Forall may elect to manage the operation of the Store for the account of Forall.

       11.9.1 If Forall so elects, the Agreement shall be deemed to be terminated and Forall shall immediately commence management of the operation of the Store for the account of Forall.  Following the date of such election, Forall shall be obligated to   acquire the merchandise in stock at the time of the election at the prices set forth in Section 11.8 of this Agreement.

       11.9.2 All revenues generated by Store shall be for the benefit of Forall from the date of such election.  Forall shall be responsible for the payment of all operating expenses incurred from the date of such election, but Operator shall remain liable for, and shall indemnify and hold harmless Forall from any claims related to or arising from, any expenses or obligations incurred prior to the date of such election or following the date upon which Forall ceases to manage the operation of the Store for the account of Forall.

FORALL000182

11.9.3 Operator agrees to cooperate fully with Forall to facilitate the transfer of management of the Store in the event of such election including, without limitation, transfer of utilities, notification to employees and assignment of all materials contracts and leases. Operator agrees to require its landlord to include in its lease for the Store a provision pursuant to which the landlord agrees to permit Operator, in the event of such an election, to grant Forall a license to lease the Store at the rental rate set forth in the lease for the period of time that Forall is managing the operation of the Store for the account of Forall.

11.9.4 If Forall elects to operate the Store in accordance with this Article 11, the lease for the Store shall be immediately assigned to Forall without any further action required by either party. Operator agrees, that in the event required, it will fully cooperate, and within two (2) business days execute the Assignment of Lease.
The parties acknowledge Landlord has granted consent to such assignment pursuant to Section 13.1 of Operator's lease with The Forum Shops, LLC.

## ARTICLE 12  TRANSFERABILITY OF INTERESTS

12.1   This Agreement and all rights hereunder may be assigned and transferred by Forall , if so, shall be binding upon and inure to the benefit of Forall's successors and assigns.

12.2   Operator's interest in this Agreement or in the business conducted hereunder shall not be pledged, transferred or assigned to or assumed by any other person, firm or entity (the "assignee" or "transferee"), in whole or in part, by sale, lease, management agreement, gift or otherwise, including involuntarily or by operation of law, or at the election of a receiver or trustee in bankruptcy, without the prior written consent of Forall.

12.3   Any change in the Control of Sarah shall be deemed a transfer for the purposes Of this Agreement.  Any purported assignment or transfer of members not having prior written Consent of Forall shall be null and void and shall constitute a material breach of this Agreement for which Forall may immediately terminate this Agreement without notice.  For the purposes of this Agreement the term change in the Control of Operator shall mean any event or occurance resulting in less than 100% of the membership interest of Operator owners by someone or some entity other than Hala Subh, Suhad Albasha, Dr. Bachar Hamad and Ammar Hammad.

## ARTICLE 13.  INDEPENDENT CONTRACTOR

13.1   Operator shall neither have nor exercise any authority , express, implied or apparent, to act on behalf of or as an agent of Forall or any of its affiliates or subsidiaries for any purpose, and shall take no action which might tend to create an apparent employer-employee or agency relationship between Forall Operator.  No fiduciary relationship exists between Forall  Operator.  Operator is,

and shall remain, an independent contractor responsible for all obligations and liabilities of, and for all loss or damage to, the Store and its business and for all claims and demands based on damages or destruction of property or based on an injury, illness or death of any person or persons, directly or indirectly arising from or in connection with the operation of the Store or to manage the business of the Store or to hire, fire, or discipline persons employed by the Operator or at the Store.  Operator acknowledges that Operator is solely responsible for control, management and business of the Store, including hiring and discharging employees and setting and paying wages and benefits of employees, and that Forall shall have no responsibility, liability or power in respect to Operator's pricing, hiring (except as otherwise provided herein), setting and paying of wages or related matters.

13.2    Under no circumstances shall Forall be liable for any act, omission, debt or any other obligation of Operator.  Operator shall indemnify and hold Forall its licensor harmless against and from all loss and damage, including the legal fees and expenses of defending against such claims, experienced by Forall or by Forall's licensor as a result of any act, omission or obligation arising directly from, or as a result of or in connection with, Operator's operation of the Store or Operator's failure to comply with this Agreement.

## ARTICLE 14.  OPTION REGARDING CITIES OF NEW YORK AND CHICAGO

14.1    Subject to terms herein and provided Operator is not in default with the terms of this Agreement, Operator shall have the exclusive option to acquire a license to operate a store in the areas noted herein, upon the same terms and conditions contained in this Agreement, except as modified by this Article.

14.2    For a two year period commencing on the earlier of date the Las Vegas store opens for business or September 1, 2011, Operator shall have the right to have the City of New York and/or City of Chicago ("New Store") included within the "Territory" as defined in section 1.4 of this Agreement to open one store in each city.  All of the terms of this Agreement shall apply to such "New Store" except as modified by this Article.

14.3    The term of this Agreement as it relates to such New Stores shall coincide with the lease term of such store but in no event shall such term be more than ten (10) years.

> For example: Operator exercised option to have New York included in the Territory on June 10, 2012.  The New York store lease commences October 1, 2012, the term of this agreement as it relates to such store would expire September 20, 2022.

14.4    The maximum amount which Forall will reimburse Operator (through discount formula contained in Article 5 of this Agreement) store buildout for a New Store shall be fifty (50%) percent of the cost.

14.5    Until Foral receives written notice of Operators exercise of option rights, Forall shall have the right to enter into a License & Retail Operator Agreement or Franchise Agreement with any other person or entity provided Forall gives fifteen (15) days prior

FORALL000184

written notice of its intention to enter into such agreement. Operator shall then have a fifteen (15) day period in which to elect to operate a store in New York City or Chicago upon the terms and conditions stated in Foralls notice. If Operator fails to provide such written notice to Forall within such fifteen (15) day period, Forall shall have the absolute right to enter into a License & Operators Agreement or a Franchise Agreement with such third party. From the date the Las Vegas Store opens for business or September 1, 2011 whichever is earlier, Operator has the exclusive right to open a store in New York or Chicago.

## ARTICLE 15. RIGHT OF 1ST REFUSAL IN AREAS OTHER THAN THE CITIES OF LAS VEGAS, NEW YORK OR CHICAGO

Subject to the terms of this provision Forall shall have the right to enter into a License/Operator Agreement, or a Franchise Agreement with any other person or entitiy but shall first give written notice to operator. Operator shall then have a fifteen (15) day period from receipt of such notice in which to notify Forall that it elects to Operate a store in such city upon the terms and conditions stated in Foralls notice. If Operator fails to provide such written notice to Forall within such fifteen (15) day period, Forall shall have the absolute right to enter into a License & Retail Operators Agreement or a Franchise Agreement with such third party. This right of first refusal shall expire two (2) years from the date the Las Vegas Store opens for business.

## ARTICLE 16. FORALL'S RIGHT TO OPERATE STORES

Nothing contained herein shall be construed to limit Foralls absolute right to establish and directly operate stores worldwide, except the territories in which Operator has a Store in operation.

## ARTICLE 17. GENERAL PROVISIONS

17.1 <u>Applicable Law</u>. This Agreement was accepted in The State of New York and shall be governed by the laws thereof which laws shall prevail, except to the extent preempted by the United States Trademark Act (Lanham Act, 15 U.S.C. Section 1051 et seq.) and other federal law.

17.2 <u>Arbitration</u>. Except as otherwise specifically provided below, and excluding controversies and payments relating to the use, ownership, or infringement of the Marks, all actions, disputes, claims and controversies heretofore or hereafter arising out of or directly or indirectly relating to: (a) this Agreement and/or any renewals, extensions, changes, amendments, addenda, additions or modifications hereto, or the breach, invalidity or termination hereof;(b) any subsequent agreements entered into between the parties hereto; (c) any pervious agreement entered into between the parties hereto; (d) any relationship or business dealings between the parties hereto; and/or (e) the transaction contemplated by this Agreement or any previous or subsequent agreement between the parties hereto, shall be settled by binding arbitration, to be

FORALL000185

conducted in Westchester County, New York, in accordance with the Commercial Arbitration Rules of the American Arbitration Association.   Nothing in this Agreement shall be constructed to prevent either party's use of any prejudgment or provisional action or remedy to enforce any party's rights under this or any other agreement, or under applicable law.  This institution and maintenance of an action for judicial relief of any party, including the plaintiff, to compel arbitration of any disputes subject to arbitration as provided herein.  If, however, either party brings any other action for judicial relief with respect to any disputes that the parties have agreed to arbitrate under the terms of this Agreement, the party who bought such action shall be liable for and will immediately pay to the other party all of the other party's costs and expenses (including attorney's fees) incurred by the other party to stay such action and remove or defer such disputes to arbitration.

Any award, judgment or order rendered by the arbitrator(s) pursuant to the terms of this Agreement may be entered and enforced by either party in any state or federal court having competent jurisdiction.   Any award, judgment or order rendered by the arbitrator(s) pursuant to such arbitration will be included in a written decision signed by the arbitrator(s) joining therein, which will specify the reasons why the award, judgment or order was based.

If either party brings legal action to vacate or modify the arbitrator's (s') award and such party does not prevail, such party will pay all costs and expenses, including attorney's fees, incurred by the other party in defending such action. Such costs and expenses will also be assessed against the petitioning party who does not prevail in any subsequent appellate action.

17.3   <u>Jurisdiction and Venue</u>.  Expect as provided in Section 14.2 regarding arbitration proceedings, if a claim is asserted in legal proceeding by Operator or Forall in connection with this Agreement, Operator and Forall irrevocably agree to submit to the exclusive jurisdiction of the courts of the State of New York and the U.S. District Court for the Southern District of New York, and irrevocably agree that venue for any such action proceeding shall be exclusively in New York County, New York.  Both parties waive any objection to the jurisdiction of these courts or to venue in New York City, New York. **FORALL OPERATOR ACKNOWLEDGE THAT THE RIGHT OF TRIAL BY JURY IS CONSTITUTIONAL ONE, BUT THAT IT MAY BE WAIVED.  EACH PARTY, AFTER CONSULTING (OR HAVING HAD THE OPPORTUNITY TO CONSULT) WITH COUNSEL OF THEIR CHOICE, KNOWINGLY AND VOLUNTARILY, AND FOR THEIR MUTUAL BENEFIT, WAIVES ANY RIGHT TO TRIAL BY JURY IN THE EVENT OF LITIGATION REGARDING THE PERFORMANCE OR ENFORCEMENT OF, OR IN ANY WAY RELATED TO, THIS AGREEMENT.**

17.4   <u>Equitable Relief</u>.  Operator acknowledges that a violation of any covenant in Article 5, 11, 12 and 13 will cause irreparable damage to Forall, the exact amount of which may no be subject to reasonable or accurate ascertainment, and therefore, notwithstanding any arbitration commenced by either party, Operator does hereby consent that, in the event such violation, Forall shall as a matter of right be entitled to injunctive relief to restrain or require specific performance of

FORALL000186

Operator (including all its shareholders), or anyone acting for or on its behalf, to prevent or cease violation of such covenants, or any of them. Such remedies, however, shall be cumulative and in addition to any other remedies to which Forall may be entitled. In the event Forall prevails in any suit to enforce any provision hereof, Forall shall be entitled to receive from Operator, in addition to any relief or remedy granted, the costs of bringing such suit, including reasonable attorney fees. The covenants set forth in this Section 15.4 shall survive the termination, transfer, nonrenewal and expiration of this Agreement.

17.5   <u>Non-Waiver</u>. No failure of Forall to exercise any power reserved to it hereunder, or to insist upon strict compliance by Operator with any obligation or condition hereunder, and no custom or practice of the parties at variance with the terms hereof, shall constitute a waiver of Forall's right to demand exact compliance the terms hereof. Waiver by Forall of any particular default by Operator shall not be binding unless in writing and executed by Forall shall not affect or impair Forall's rights in respect to any subsequent default of the same or a different nature; nor shall any delay, waiver, forbearance, or omission of Forall to exercise any power or rights arising out of any breach or default by Operator's rights nor shall such a waiver by Forall of any right hereunder or of the right to declare any subsequent breach or default. Subsequent acceptance of Forall of any payment due to it hereunder shall not be deemed to be a wavier by Forall of any proceeding breach by Operator of any terms, covenants or conditions of this Agreement.

17.6   <u>Notices</u>. Any and all notices required or permitted under this Agreement shall be in writing and shall be sent by hand or by courier or certified or registered mail or by facsimile transmission or overnight courier to the respective parties at the following addresses unless and until a different address has been designated by written notice to the other party. Notice shall be effective upon receipt, if sent by hand, courier or mail or upon receipt of a confirmation if sent by facsimile transmission. Either party may change the name and address for notices by a written notification served on the other party in accordance with this Section 14.6.

|  |  |
|---|---|
| Notices to Forall: | Forall U.S.A, Inc.<br>Seven Sutton Place<br>Brewster, NY 10509 |
| Copy to: | James J. Veneruso, Esq.<br>Veneruso, Curto Schwartz & Curto  LLP<br>35 East Grassy Sprain Road, Suite 400<br>Yonkers, New York 10710 |
| Notices to Operator: | Sarah, LLC<br>1717 Midwest Club Parkway<br>Oakbrook, IL 60523 |

FORALL000187

Copy to:          Mr . Lee Levin, Esq.
7250 North Cicero Avenue, Suite 200
Lincolnwood, Illinois 60712-1693

17.7    <u>Entire Agreement</u>.  This Agreement shall constitute the entire full and complete agreement between the parties concerning the subject matter hereof.   No other representation has been relied upon by Operator or its directors, officers or shareholders, or induced Operator to execute this Agreement and there are no representations, inducements, promises, or agreements, oral or otherwise, between the parties not embodied herein , which are of any force or effect with reference to this Agreement or otherwise.  No amendment, change or variance from this Agreement shall be binding unless executed in writing.

17.8    <u>Severability</u>.  Each section, subsection, term and provision of this Agreement shall be considered severable, and if for any reason, any section, subsection, term or provision herein is determined to be invalid and contrary to, or in conflict with, any existing or future law or regulation, such shall not impair the operation of or affect the remaining portions, sections, subsections, terms and provisions of the Agreement, and the latter will continue to be given full force and effect and bind the parties hereto; and said invalid sections, subsections, terms or provisions shall be deemed not part of this Agreement.

17.9    <u>Parties</u>.   Anything to the contrary herein notwithstanding, nothing in this Agreement is intended, nor shall be deemed to confer upon any person or legal entity other than Forall or Operator as a third party beneficiary hereto, and such of their respective successors and assigns as may be contemplated by this Agreement, any right or remedies under or by reason of this Agreement.

17.10    <u>Captions</u>. All captions herein are intended solely for the convenience of the parties, and none shall be deemed to affect the meaning or construction of any provision hereof.

17.11    <u>Counterparts</u>.  This Agreement may be executed in multiple copies, and each copy executed shall be deemed an original.

## ARTICLE 18 CAVEAT

18.1    Operator acknowledges that it has entered into this Agreement after making an independent investigation of Forall's operations and not in reliance upon or as a result of a representation as to gross revenues, volume, potential earnings or profits which Operator in particular might be expected to realize, nor has anyone made any other representation which is not expressly set forth herein, on which Operator or its shareholders, officers or directors relied to induce Operator to accept and execute this Agreement. Forall does not make any representation, warranty or guaranty, express or implied, as to the potential success of the business venture contemplated hereby.

FORALL000188

18.2   In order to induce Forall U.S.A. Inc. to enter into this Agreement <u>Hala Subh</u> and <u>Suhad Albasha</u>, each owning a 50% interest in <u>Operator, and their husbands Bachar Hamad and Ammar Hamad have executed,</u> a Guaranty of even date herewith attached hereto at Exhibit A and the effectiveness of this Agreement is conditioned upon the execution of said Guaranty.

18.3   The effectiveness of this agreement is predicated upon Operator (a). executing and delivering to Forall a collateral assignment of the lease for the store, attached hereto at Exhibit A, (b).  copy of the filing receipt and Operating Agreement of Sarah, LLC; (d).  copy of the fully executed Store lease.  In the event the foregoing documents are not provided by April 1, 2011 Forall shall have the absolute right to cancel this Agreement by giving written notice to Operator.

. B . H

4/8/11

. S A

4/12/11 . H S

THE BALANCE OF THIS PAGE INTENTIONALLY LEFT BLANK

FORALL000189

**IN WITNESS  WHEREOF**, the parties hereto execute this Agreement under seal by their duly authorized representatives as of the date first above written.

Attest:

**Forall U.S.A., Inc.**

_____

Witness

By: _____

Its: _____

Attest:

**Sarah, LLC., Operator**

_____

Witness

By: _____
Hala subh

Its: Member as to a 50% interest

By: _____
Suhad albasha

Its: Member as to a 50% interest

STATE OF  ILLINOIS      )
                        ) ss.:
COUNTY OF  DUPAGE       )

On the 9 day of MARCH in the year 2011 before me, the undersigned personally appeared **Hala subh** personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity, and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____

(signature and office of individual taking acknowledgment)

"OFFICIAL SEAL"
Sarah E. Botka
Notary Public, State of Illinois
Will County
My Commission Expires 06-08-2014

STATE OF ILLINOIS        )
                         ) ss.:
COUNTY OF DuPage         )


On the 19 day of MARCH in the year 2011 before me, the undersigned personally appeared **Suhad albasha** personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity, and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_Sarah E Botka_

(signature and office of individual taking acknowledgment)

```
"OFFICIAL SEAL"
Sarah E. Botka
Notary Public, State of Illinois
Will County
My Commission Expires 06-08-2014
```

FORALL000191

# EXHIBIT A

## Collateral Assignment of Lease

G:\CORPORATE\Pal Zileri\Agreement – Bashar Hamad\2010.12.16 Franchise Agreement.Final.doc

FORALL000192

## COLLATERAL ASSIGNMENT OF LEASE

**THIS COLLATERAL ASSIGNMENT OF LEASE** ("Assignment"), made as of the __ day of March, 2011 by and among Sarah, LLC, a Limited Liability Company formed in the State of Illinois, having an address at c/o Palma Settimi Inc., Seven Sutton Place, Brewster, New York ("Assignor or Tenant" ), and Forall U.S.A. a corporation organized and existing under the laws the State of New York with an address at Seven Sutton Place, Brewster, New York 10509, ("Assignee");

## W I T N E S S E T H:

**WHEREAS,** Assignor is the tenant under a Lease Agreement (together with all amendments and modifications thereto, the "Lease") dated as of _____, 2010 for the Store located at The Forum Shops at Caesars Palace, Space G19, 3500 Las Vegas Blvd. South, Las Vegas, NV 89109; and

**WHEREAS,** as a condition to Landlord letting the Premises to Tenant, Landlord required that the Assignee guarantee the obligations of Tenant pursuant to the terms of the Lease;

**WHEREAS**, Assignee is willing to provide said guarantee to Landlord in consideration of Tenant executing this Collateral Assignment of Lease giving Assignor the option to take over the Premises from Tenant should the Landlord call on Assignee to perform pursuant to any provision of its guarantee.

**NOW THEREFORE**, in consideration of the foregoing and the mutual covenants hereinafter contained, the parties hereto agree as follows:

1. **Grant of Security Interest and Assignment.** Assignor hereby grants a security interest in, assigns, transfers, conveys and sets over to Assignee, all of Assignor's estate, title and interest in and to the Lease (the entirety of such estate, title and interest, and all rights, powers, privileges, options and other benefits of Assignor pursuant thereto, including the proceeds thereof, are hereinafter referred to collectively as the "Assignor's Interests"). The assignment of, and grant of a security interest in, Assignor's Interests shall be absolute and unconditional, and shall be effective upon the execution of this Assignment.

2. **Collateral Security**.  The grant of the security interest, assignment, transfer and conveyance effected by Section 1 hereof is made by Assignor for the purpose of securing the performance of Assignor's obligations pursuant to the terms of the lease.

3.     **Representations, Warranties and Covenants of Assignor**.

Assignor represents and warrants to, and covenants with, Assignee as follows:

(a)  Assignor is the tenant under the Lease and no other party has any right, title or interest as a tenant, undertenant or assignee under the Lease.

(b)  Assignor has full right, power and authority to assign and transfer to Assignee the Assignor's Interests, free and clear of all liens, claims or encumbrances of any kind whatever, and this Assignment is effective to do so.  The execution and delivery of this Assignment and the performance and observance of the obligations of Assignor hereunder will not violate the provisions of any agreement between Assignor and the Landlord under the Lease, or any other party or any other agreement of any kind to which Assignor is a party or by the terms of which Assignor is bound.

(c)  There will be no defaults under the Lease.

(d)  So long as this Assignment remains in effect, Assignor will not, without Assignee's prior written consent, sell, assign, convey, pledge, encumber or otherwise transfer to any other person, firm or entity any interest in the Lease.

4.     **Default and Remedy**. If Assignor breaches any of the representations, warranties or covenants herein contained, or if a default under the Lease or an Event of Default shall occur and Landlord calls upon Assignee to honor its guarantee, or if Assignor shall make an assignment for the benefit of creditors, be adjudged bankrupt or have filed in its behalf or against it any type of bankruptcy or insolvency proceeding, or if a trustee or receiver shall be appointed for Assignor or  any of its property (the foregoing hereinafter referred to as an "Event of Default"), then, and in any such event, Assignee shall have the absolute right, without notice or demand, to succeed to the rights of Assignor as tenant under the Lease in accordance with the assignment evidenced hereby.

5. **Non-inclusive Remedy**. Should a default under the Lease or an Event of Default occur, and Assignee is called upon by Landlord to honor its guarantee, in addition to succeeding to the rights of Assignee as tenant under the Lease,  Assignee may also at its election proceed directly and personally against Assignor to collect any and all damages incurred by reason of such default or Event of Default, including, but not limited to, any

FORALL000194

sums paid to Landlord rightfully owed by Assignor, attorneys fees and any other expenses or damages incurred by Assignor in connection with honoring its guarantee.

6. **Waiver of Certain Laws**. Assignor agrees, to the full extent permitted by law, that upon the occurrence of any default or Event of Default, neither Assignor nor anyone claiming by or under Assignor shall or will set up, claim or seek to take advantage of laws now or hereafter in force in order to prevent or hinder the enforcement of this Assignment, and Assignor, for Assignor and all who may at any time claim through or under Assignor, hereby expressly waives to the full extent that Assignor may lawfully do so, the benefit of any such laws.

7. **Recording and Filing**. A counterpart of this Assignment and/or one or more UCC-1 financing statements may be recorded or filed, at the option of Assignee, in such offices as may be provided by law or as Assignee may deem appropriate. Assignor agrees to execute and deliver to Assignee any financing statements required under the Uniform Commercial Code as enacted in any state in which such recordation and filing would be appropriate. The costs of all such recordings and filings shall be borne by Assignor.

8. **Notices**. Each notice required or permitted hereunder shall be deemed to have been properly given or served by the deposit of same in the United States Mail, designated as registered or certified mail, return receipt requested, bearing adequate postage, and addressed as hereinafter provided:

|  |  |
|---|---|
| If to Assignor, to | Sarah, LLC<br>1717 Midwest Club Parkway<br>Oakbrook, IL 60523 |
| with a copy to | Mr. Adams<br>Bardier & Adams |
| If to Assignee, to | Forall, U.S.A.<br>Seven Sutton Place<br>Brewster, New York |
| with a copy to | James J. Veneruso, Esq.<br>Veneruso, Curto, Schwartz & Curto LLP<br>35 East Grassy Sprain Road, Suite 400<br>Yonkers, New York 10710 |

FORALL000195

Each notice shall be effective upon being deposited as aforesaid, and rejection or other refusal to accept or the inability to deliver because of changed address of which no notice was given shall be deemed to be receipt of the notice sent.

9. **Assignment Irrevocable; Supplemental Instruments**. Assignor agrees that the assignment, transfer and conveyance made hereby is irrevocable, and that Assignor will not, while this Assignment is in effect, take any action that is inconsistent with this Assignment, or make any other assignment or conveyance of Assignor's Interests (other than to Assignee) without Assignee's prior written consent, and that any such assignment or conveyance without such consent shall be void and of no effect. Assignor will from time to time, upon request of Assignee, execute all instruments of further assurance and all supplemental instruments necessary to effect the transactions contemplated hereby as Assignee may specify.

10. **Amendment**. This Assignment may be amended or modified only in a writing specifically referring to this Assignment and executed by each of the parties hereto.

11. **Governing Law**. This Assignment shall be construed and enforced in accordance with the internal laws of the State of Nevada. The invalidity, illegality or unenforceability of any provision of this Note shall not affect or impair the validity, legality or enforceability of the remainder of this Note, and to this end, the provisions of this Note are declared to be severable.

12. **Counterparts**. This Assignment may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

13. **Jurisdiction and Venue**. Assignor hereby consents to the jurisdiction of the courts of the State of Nevada in the County wherein the Store is located and the United States District Court for the District wherein the Store is located, as well as to the jurisdiction of all courts from which an appeal shall be taken from such courts, for the purpose of any suit, action or other proceeding arising out of any of its obligations arising under this Assignment or with respect to the transactions contemplated hereby, and expressly waives any and all objections it may have as to venue in any of such courts.

14. **Waiver of Trial by Jury**. ASSIGNOR AND ASSIGNEE HEREBY WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDINGS, CLAIMS OR COUNTER-CLAIMS, WHETHER IN CONTRACT OR TORT, AT LAW OR IN EQUITY, ARISING OUT OF OR IN ANY WAY RELATING TO THIS AGREEMENT.

FORALL000196

15. **Miscellaneous**.  The section and paragraph headings contained in this Assignment are inserted for convenience only and shall not affect in any way the meaning or interpretation of this Assignment.  When used herein, the singular shall include the plural, and vice versa, and the use of the masculine, feminine or neuter gender shall include all other genders, as the context may require.


IN WITNESS WHEREOF, the parties hereto have executed this Assignment or have caused this Assignment to be duly executed as of the date first above written.


Sarah, LLC


By:_____
Name: Hala subh
Title: Member

By:_____
Name:  Suhad albasha
Title:  Member


Forall U.S.A.


By:_____
Name:
Title:


LANDLORD:


By:_____


-5-

FORALL000197

STATE OF ILLINOIS )
                            ) ss.:
COUNTY OF Dupage )

On the 19 day of MARCH in the year 2011 before me, the undersigned personally appeared **Hala subh** personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity, and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
(signature and office of individual taking acknowledgment)

STATE OF ILLINOIS )
                            ) ss.:
COUNTY OF Dupage )

"OFFICIAL SEAL"
Sarah E. Botka
Notary Public, State of Illinois
Will County
My Commission Expires 06-08-2014

On the 19 day of MARCH in the year 2011 before me, the undersigned personally appeared **Suhad albasha** personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity, and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
(signature and office of individual taking acknowledgment)

"OFFICIAL SEAL"
Sarah E. Botka
Notary Public, State of Illinois
Will County
My Commission Expires 06-08-2014

-6-

STATE OF                          )
                                  ) ss.:
COUNTY OF                         )


On the ___day of _____ in the year 2011 before me, the undersigned
personally appeared _____ personally known to me or proved to me
on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed
the same in his/her/their capacity, and that by his/her/their signature(s) on the
instrument, the individual(s), or the person upon behalf of which the individual(s) acted,
executed the instrument.


_____
  (signature and office of individual taking acknowledgment)



STATE OF                          )
                                  ) ss.:
COUNTY OF                         )


On the ___day of _____ in the year 2011 before me, the undersigned
personally appeared _____ personally known to me or proved to me on
the basis of satisfactory evidence to be the individual(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed
the same in his/her/their capacity, and that by his/her/their signature(s) on the
instrument, the individual(s), or the person upon behalf of which the individual(s) acted,
executed the instrument.


_____
  (signature and office of individual taking acknowledgment)

-7-

FORALL000199

## Guaranty

The undersigned, in order to induce Forall U.S.A., Inc. ("Company") to enter into a License and Retail Operator Agreement ("Operator Agreement"), dated the____day of March 2011with  Sarah, LLC ("Operator"), **Hala subh, Suhad albasha, Bacher Hamad and Ammar Hamad** (each individually as a  "Guarantor") unconditionally, jointly and severally, guarantees to Company, its successors or assigns, the prompt full payment and performance of all obligations of Operator which are or may become due and owing to Company under the Franchise Agreement and all obligations arising out of any other agreement (whether or not in effect on the date hereof) between Operator and Company, including but not limited to any other franchise agreement, security agreement, purchase agreement, sublease or promissory note, and all extensions or renewals thereof, and the payment of all attorney's fees, costs and other expenses incurred by Company to enforce this Guaranty (collectively, with the License and Retail Operator Agreement, the "Agreements") in the same manner as if Agreements were executed between Company and the undersigned directly, as Operator.

The undersigned expressly waive(s): (a) notice of the acceptance by Company of this Guaranty, (b) demands of payment, presentation and protest, (c) all rights to assert or plead any statute of limitations as to or relating to this Guaranty, (d) any right to require Company to proceed against any other Guarantor, if any, or any other person or entity liable to Company, (e) any right to require Company to proceed under any other remedy Company may have before proceeding against Guarantor, or any other Guarantor, and (f) any right of subrogation. This Guaranty shall not be affected by the modification, amendment, extension, release or renewal of any agreement between Company and Operator, the taking of a note or other obligation from Operator or others, the taking of security for payment, the granting of extension of time for payment, the filing by or against Operator of bankruptcy, insolvency, reorganization of other debtor's relief afforded by the Federal Bankruptcy Act or any other state or federal statute or by the decision of any court, or any other matter, whether similar or dissimilar to any of the foregoing; and this Guaranty shall cover the terms and obligations of any such modifications, notes, security agreements, extensions, or renewals. The obligations of the undersigned shall be unconditional notwithstanding any defect in the genuineness, validity, regularity, or enforceability of the Operator's obligations or liability to Company, or any other circumstances whether or not referred to herein which might otherwise constitute a legal or equitable discharge of a surety or guarantor.

This is an irrevocable, unconditional and absolute guaranty of payment and performance and the undersigned agree(s) that his, hers or their liability of this Guaranty shall be immediate and shall not be contingent upon the exercise or enforcement by Company of whatever remedies

it may have against the Operator or others, or the enforcement of any lien or realization upon any security Company may at any time possess.

The undersigned covenant(s) and agree(s) that any indebtedness by the Operator to the undersigned, for any reason, currently existing, or which might hereafter arise, shall at all times be inferior and subordinate to any indebtedness owed by the Operator to Company.

The undersigned further covenant(s) and agree(s) that as long as the Operator owes any monies to Company the Operator will not pay and the undersigned will not accept payment of any part of any indebtedness owed by the Operator to any one of the undersigned, either directly or indirectly, without the consent of Company.

This Guaranty shall remain in full force and effect until all obligations arising out of and pursuant to the Agreements including all renewals, modifications, amendments and extensions thereof, are fully paid and satisfied.

This Guaranty shall be governed by and interpreted in accordance with the laws of the State of New York without regards to its conflicts of laws principles. Any dispute arising out of or under this Guaranty not settled by arbitration shall be resolved in accordance with the dispute resolution process set forth in the Agreement

**SIGNATURE PAGE TO FOLLOW**

2

FORALL000201

**IN WITNESS THEREOF**, the undersigned have constituted this Agreement on the date set forth below.

Dated: March___, 2011

**GUARANTOR(S)**

**Hala subh**
**Address:** 1717 MIDWEST clubs, Oak Brook, IL 60523 , **Social Security #** 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
**Drivers License #** 5103-3206-496 / **State of Issuance** IL

**Suhad albasha**
**Address:** 1 Andrew Ct. Burr Ridge. IL 605 27 , **Social Security #** 324 90.0181
**Drivers License #** A142-7807-1731 **State of Issuance**___

**Bachar Hamad**
**Address:** 1717 Midwest club PK, IL 60523 , **Social Security #** 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
**Drivers License #**___ / **State of Issuance** IL

**Ammar Hamad**
**Address:** 1 Andrew Ct. Burr Ridge IL 60527 , **Social Security #** 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
**Drivers License #** H 530.0006.1297 / **State of Issuance** IL

STATE OF ILLINOIS        )
                                      ) ss.:
COUNTY OF Dupage    )

    On the 19 day of March in the year 2011 before me, the undersigned personally appeared **Hala subh** personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity, and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Sarah E Botka
(signature and office of individual taking acknowledgment)

"OFFICIAL SEAL"
Sarah E. Botka
Notary Public, State of Illinois
Will County
My Commission Expires 06-08-2014

3

STATE OF ILLINOIS )
) ss.:
COUNTY OF DuPage )

On the 19 day of March in the year 2011 before me, the undersigned personally appeared **Suhad albasha** personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity, and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Sarah E Botka
(signature and office of individual taking acknowledgment)

"OFFICIAL SEAL"
Sarah E. Botka
Notary Public, State of Illinois
Will County
My Commission Expires 05-08-2014

STATE OF ILLINOIS )
) ss.:
COUNTY OF DuPage )

On the 19 day of March in the year 2011 before me, the undersigned personally appeared **Bachar Hamad** personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity, and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Sarah E Botka
(signature and office of individual taking acknowledgment)

"OFFICIAL SEAL"
Sarah E. Botka
Notary Public, State of Illinois
Will County
My Commission Expires 06-08-2014

STATE OF ILLINOIS )
) ss.:
COUNTY OF DuPage )

On the 19 day of March in the year 2011 before me, the undersigned personally appeared **Ammar Hamad** personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity, and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Sarah E Botka
(signature and office of individual taking acknowledgment)

"OFFICIAL SEAL"
Sarah E. Botka
Notary Public, State of Illinois
Will County
My Commission Expires 06-08-2014

4

FORALL000203